**EXHIBIT 4**

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

**PREMARITAL AGREEMENT**

**NOTICE: THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT AND THE SOUTH CAROLINA UNIFORM ARBITRATION ACT (S.C. CODE ANN. § 15-48-10 ET. SEQ.) AND APPLICABLE RULES.**

THIS PREMARITAL AGREEMENT (this "Agreement") is made and entered into this ___ day of September, 2015, by and between PATRICK J. KELLY ("Husband"), a male citizen and resident of Charleston County, South Carolina, and SUSAN A. BUTLER ("Wife"), a female citizen and resident of Charleston County, South Carolina (Husband and Wife may be collectively referred to as the "Parties" or individually as a "Party").

WHEREAS, the Parties plan and intend to marry one another in the near future and in contemplation of their marriage, desire to enter into a premarital agreement;

WHEREAS, the Parties hereby express their love for each other and their commitment to their impending marriage. This Agreement is not intended to be, and is not to be construed as, an inducement of divorce or separation, and each Party deeply respects the solemnity of marriage;

WHEREAS, each Party owns property and desires that all property now owned or subsequently acquired by each Party shall be free from any claim of the other that may arise by reason of their marriage, except as the Parties have otherwise expressly provided in this Agreement;

WHEREAS, the Parties desire to enter into this Agreement in contemplation of their marriage in order to provide for all rights that either Party might have relating to property or support by reason of the Parties' marriage and to further establish such rights that either Party might have in the event of a separation, divorce, or the death of either Party;

WHEREAS, the Parties confirm and warrant that this Agreement is not obtained through fraud, duress, or mistake, or through misrepresentation or nondisclosure of material facts; and

WHEREAS, the Parties confirm and warrant that this Agreement is not unconscionable and is fair and reasonable to both Parties;

NOW, THEREFORE, in consideration of the covenants and agreements set forth in this Agreement, together with other valuable consideration, the receipt of which is hereby acknowledged by each Party, the Parties hereby agree as follows:

_____
Patrick J. Kelly

_____
Susan A. Butler

1

Butler-Carl_King_00001          Butler-Carl King00001

## ARTICLE I
## DEFINITIONS & RULES

For purposes of this Agreement, the following definitions and rules shall apply:

1)      Property. "Property" means an interest, present or future, legal or equitable, vested or contingent, whether tangible or intangible, in any real or personal Property of any nature, including income and earnings or other future appreciation of any nature, wherever said Property may be located and whether such Property is now owned by either Party or is acquired by either Party at any point in the future either before or after the Parties are married.

2)      Marital Property. "Marital Property" means only the following Property and the proceeds thereof:

a)      Property that is or has been contributed to or held in any joint account established by the Parties. Additionally, if Property has been contributed to a joint account of the Parties, any Property that is withdrawn from the joint account by one of the Parties shall remain Marital Property in the hands of the withdrawing Party, unless otherwise agreed to under that section entitled "Reclassification of Property";

b)      Property that is acquired by both Parties as a wedding gift or as a gift in anticipation of the Parties' marriage;

c)      Property that has been acquired as a gift to both of the Parties as a married couple;

d)      Property that has been reclassified as Marital Property pursuant to the specific terms of subsection (a) of the section of this Agreement entitled "Reclassification of Property";

e)      The marital portion of any Dual-classification Property as defined below;

f)      Property acquired in exchange for Marital Property or with proceeds from Marital Property;

g)      Any income earned or derived from Marital Property; and

h)      Any increase in value of Marital Property by reason of active or passive appreciation.

The Parties recognize that the term "Marital Property" as defined herein, is considerably narrower in scope than the definition of such term as set forth in S.C. Code § 20-3-630. It is the Parties' intent to be bound by the contractual definition of Marital Property as defined herein rather than any other definition, statutory or otherwise. For all purposes of this Agreement "Marital Property" shall only include those items specifically set forth in this section entitled "Marital Property."

3)     Separate Property. "Separate Property" means all Property owned by a Party to this agreement (other than Marital Property, as that term is defined in this agreement, and other than that portion of Dual-classification Property that is classified as Marital Property), including but not limited to the following Property and the proceeds thereof:

a)     All Property owned by one Party at the time of the Parties' marriage shall be the Separate Property of the owner;

b)     All Property acquired and titled in the individual name of either Party (and not in the joint names of both Parties) shall be the Separate Property of the title holder, including bank accounts that are in the individual name of either Party, provided that such Property was not removed from an account held jointly by the Parties without having been reclassified pursuant to that section entitled "Reclassification of Property" (for example, Property acquired and titled in the individual name of Wife shall be Wife's Separate Property and Property acquired and titled in the individual name of Husband shall be Husband's Separate Property);

c)     All salary, other income or other benefits from employment or personal services earned or otherwise received individually by either Party before or during marriage shall be the Separate Property of the recipient of such salary, other income, or other benefits;

d)     All interest(s) in trust(s), or Property held therein, created prior to or during the Parties' marriage for the complete or partial benefit of either Party (to the extent such interest is determined to be a Property interest) shall be the Separate Property of the Party who is the beneficiary of such trust(s)

e)     All money and other Property received from a trust by either Party during the Parties' marriage, including all Property received as a distribution (whether mandatory or discretionary) from any such trust, shall be the Separate Property of the Party who receives the Property from the trust;

f)     All interest(s) in or property from closely-held business entities and any other type business entity acquired separately by either Party prior to or during the Parties' marriage, including all property received as a distribution or dividend (whether mandatory or discretionary) from any such business entities, shall be the separately owned property of the Party who receives the interest(s) in or Property from closely-held business entities or any other type business entity.

g)     All Property now owned or hereafter acquired individually by either Party by bequest, devise, descent, inheritance or gift from any source whatsoever (other than from the other Party) prior to or during the Parties' marriage shall be the Separate Property of the Party who acquires such Property by bequest, devise, descent, inheritance, or gift;

h)     All vested pension or retirement rights and the expectation of vested and non-vested pension or retirement rights shall be the Separate Property of the plan participant or named owner of such pension or retirement account or plan;

Butler-Carl King00003

i)  Property given as a normal holiday or celebratory gift (e.g. holiday, birthday, wedding, anniversary, special occasion, etc.) of separately owned Property or Marital Property, other than cash, from one Party to the other Party shall be the Separate Property of the donee;

j)  Property that has been reclassified as the Separate Property of either Party pursuant to the provisions of the section entitled "Reclassification of Property" below;

k)  Property that is deemed, pursuant to the section entitled "Constructive Trust" below, to be held by either Party in constructive trust for the benefit of the other Party shall be the Separate Property of the Party for whose benefit such Property is held;

l)  All Property acquired with Property or proceeds from Property described in this section entitled "Separate Property;"

m)  Any income earned or derived from Property described in this section entitled "Separate Property;"

n)  Any increase in value of Property described in this section entitled "Separate Property" by reason of active or passive appreciation; and

o)  All other Property of any nature that is not Marital Property shall be the Separate Property of the owner of such Property.

Notwithstanding the forgoing, Property that is Separate Property of one Party shall become Separate Property of the other Party only if such Property is reclassified as provided in the section entitled "Reclassification of Property" below, and Property that is Marital Property shall become Separate Property of a Party only if such Property is reclassified as provided in the section entitled "Reclassification of Property" below.

4)  Dual-classification Property. "Dual-classification Property" means any Property acquired with one Party's Separate Property along with Marital Property and/or the other Party's Separate Property. In such event, the Dual-classification Property so acquired shall have a "dual classification"—part Separate Property of one or both Parties and part Marital Property of both Parties. Dual-classification Property shall be classified as Marital Property or Separate Property based upon, and in such proportions as, the source of funds utilized to acquire such Property. In the event of permanent separation, the marital component of Dual-classification Property shall be divided consistent with the section of this Agreement entitled "Division and Distribution of Property Upon Permanent Separation or Dissolution of Marriage." The Separate Property component of Dual-classification Property shall be returned to the Party who contributed the Separate Property used to acquire such Dual-classification Property. Both the Marital Property and Separate Property components of Dual-classification Property shall each be entitled to a proportionate share of any increase(s) or decrease(s) in the value of the Dual-classification Property based upon the actual amount of marital or Separate Property contributed to acquire Dual-classification Property. The marital or separate classification of Dual-classification Property shall be based only on the source of funds or other Property utilized to acquire such

Butler-Carl_King_00004                                    Butler-Carl King00004

Property, and, except as otherwise specifically provided in this Agreement, contributions other than funds or other Property to the acquisition or increase in value of such Property shall not be considered in determining the separate and/or marital classification of Dual-classification Property (for example, one Party's contributions of personal efforts, labor, sweat equity, and/or time to the improvement of Property shall not cause a portion of that Property to become Marital Property or that Party's Separate Property based on such contribution of personal efforts, labor, sweat equity, and/or time).

5)    Special Treatment of Isle of Palms Residence. At the time of the execution of this Agreement, the Parties are in the process of building what they intend to be the Parties' primary residence, which is located at 27 Morgans Cove Drive, Isle of Palms, South Carolina, 29451 (such land, together with improvements shall be referred to as the "IOP Residence"). The IOP Residence is Dual-classification Property, however, the classification of each component of the IOP Residence shall be calculated as follows:

a)    Each Party's share of the IOP Residence shall be classified as the Separate Property of each of the Parties, and the interest held by each Party in the IOP Residence shall be initially determined, in such proportions as the source of the funds utilized to acquire the land and build the IOP Residence, except that to reflect Husband's personal efforts, labor, and time, in addition to accounting for the funds contributed by Husband, a proportionate interest equal to twelve percent (12%) of the actual cost of building the IOP Residence shall be added to Husband's initial proportionate interest in the IOP Residence. Additionally the Parties shall, within a reasonable time following the completion of the IOP Residence, execute, deliver, and record or cause to be recorded a deed reflecting each Party's interest in the IOP Residence at such time, as determined pursuant to this subsection (a).

b)    During the course of the Parties' marriage, adjustments shall be made to the classification of the IOP Residence as Marital Property or Separate Property including the portion of the IOP Residence that is the Separate Property of each Party, in such proportions as the source of funds used to acquire the IOP Residence, including payments on indebtedness secured by the IOP Residence, and payments for the cost of improvements on the IOP Residence; provided that such improvements can reasonably be expected to increase or maintain the fair market value of the IOP Residence, and which cost one thousand dollars ($1,000) or more.

c)    In the event of a permanent separation initiated by either Party, if at such time the Parties own the IOP Residence, then the Parties will agree upon the fair market value of the IOP Residence at the time of permanent separation. If the Parties cannot agree with in thirty (30) days, the Parties shall have the IOP Residence appraised by a third-party independent appraiser to determine the fair market value of the IOP Residence. At such time the Parties shall finalize any adjustments to the classification of the IOP Residence as described in subsection (b) above, and the interest of each Party in the IOP Residence shall follow the classification thereof. The Parties shall, within sixty (60) days of permanent

Butler-Carl King 00005

permanent separation, execute, deliver and record or cause to be recorded a deed reflecting each Party's interest in the IOP Residence at such time, as determined herein. Upon a permanent separation, possession of the IOP Residence and matters related thereto shall be determined by and in accordance with the section of this Agreement entitled "Possession of Residence." If the Parties cannot agree upon an appraiser, each Party shall engage his or her own appraiser, and the average of the values determined by each appraiser shall serve as the fair market value for purposes of adjusting ownership pursuant to this subsection (c).

d)    Upon the death of the predeceasing Party while the Parties are still married, and provided they are living together and are not permanently separated as defined in Article I, section 8 of this Agreement, the ownership of the IOP Residence shall be determined in accordance with that section of this Agreement entitled "Fixed Bequest Upon Death."

Except as otherwise specifically provided herein, the classification of the IOP Residence as Marital Property or Separate Property, including but not limited to provisions regarding classifying the source of the funds utilized for the Property, shall be determined in accordance with the other provisions of this Agreement.

6)    Reclassification of Property.    There shall be no transmutation of Property classified as either Separate Property or Marital Property, except as provided in this section entitled "Reclassification of Property." Property classified as either Separate Property or Marital Property shall be reclassified only as follows:

a)    Separate Property of one Party shall be reclassified as Marital Property (and not the Separate Property of the other Party) only to the extent that one Party conveys and retitles, if applicable, his or her Separate Property to the other Party or to both Parties. Additionally, the act of depositing Separate Property of one of the Parties into an account held jointly by both Parties shall cause such deposited Property to be classified as Marital Property.

b)    Separate Property of one Party shall be reclassified as Separate Property of the other Party in the event that, and only in the event that, either:

i)    one Party conveys his or her own Separate Property to the other Party and, at the time of the conveyance, executes a written instrument that includes the following language expressly stating the specific intent to reclassify all or any part of such Separate Property as the Separate Property of the other Party: "In making this gift of __(item)__ to you,_____(donee)____, I intend for this to be your Separate Property.  Date: _____, Signed: __(donor)__;"

ii)    one Party gives a normal holiday or celebratory gift of Separate Property as contemplated in the section of this Agreement entitled "Separate Property."



c)      Marital Property shall be reclassified as Separate Property of either Party in the event that, and only in the event that, either:

    i)      one Party conveys Marital Property to the other Party and, at the time of the conveyance, executes a written instrument that includes the following language expressly stating the specific intent to reclassify all or any part of such Marital Property as the Separate Property of the other Party:  "In making this gift of ____(item)___ to you,___(donee)___, I intend for this to be your Separate Property.  Date: _____, Signed:__(donor)_," or

    ii)     one Party gives a normal holiday or celebratory gift of Marital Property as contemplated in the section of this Agreement entitled "Separate Property."

7)      <u>Constructive Trust</u>.  Any Property of one Party that is transferred to or for the benefit of the other Party outside of the requirements of the section entitled "Reclassification of Property," above, shall be deemed to be held by the transferee in a constructive trust for the benefit of the transferor.

8)      <u>Permanent separation</u>.  "Permanent separation" or "permanently separated" means either Party separates from the other and is no longer living with the other for a period of sixty (60) days, with the intent of ceasing marital cohabitation and thereafter living separate and apart ("intent to separate").  Without limiting the ways in which the Parties may establish the Parties' respective intent to separate, the "intent to separate" shall be deemed conclusively established by the Party desiring such separation by giving the other Party written notice of such intent to separate. The intent to separate shall be accompanied by the physical removal by one Party from the Parties' principal residence prior to or at the time of the intent to separate. Temporary separations between the Parties related to work, travel or minor disagreements does not constitute a permanent separation.

**ARTICLE II**
**RIGHTS AND OBLIGATIONS OF THE PARTIES**

1)      <u>Right to Contract and Convey</u>.  Each Party shall have the right to contract and to be contracted with independently of the other as fully and to all intents and purposes as if the Parties were not married. Either Party may convey real and personal Property titled in the Parties' own name or any interest in such Property without the consent or joinder of the other. The right to freely transfer Property titled in the Parties' own names shall also be reflected in the Memorandum of Premarital Agreement that the Parties will execute pursuant to the section of this Agreement entitled "Execution of Additional Documents." No transfer of Property titled in the individual name of a Party shall affect the Marital Property or Separate Property status of such Property or proceeds of such Property except as specifically provided in the section of this agreement entitled "Reclassification of Property."

2)      <u>Waiver of Rights in Separate Property.</u>  Each Party waives, releases, and surrenders forever all rights or claims that the Parties may have or hereafter acquire in any of the Separate Property of the other by reason of the Parties' marriage, including but not limited to any

Butler-Carl King00007

rights that either Party might have or acquire under the present or future laws of any jurisdiction relating to equitable distribution of Property or other determination and distribution of community or quasi-community Property that may be applicable to this Agreement or to any such Separate Property at the time of its enforcement.

3)    Free Trader; Sale of Property.   It is the Parties' intent, and each Party agrees, that after the Parties' marriage, notwithstanding the laws of any applicable jurisdiction to the contrary, each Party shall have the exclusive right during the Parties' lifetime, or at death by will or any other testamentary disposition, as if the Parties were unmarried, to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control any part or all of the Parties' respective Separate Property, real and personal, without the consent, release, or signature of the other on any instrument of transfer or other document of any nature and free from any claim of or interference by or from the other. If either Party desires to convey, mortgage, or otherwise encumber the Parties' respective Separate Property, real or personal, it shall not be necessary in order to give good title that the other sign the deed, deed of trust, or other instrument of transfer, it being the intent and agreement of each Party to hereby release to the other all right, title, and interest that the Parties might otherwise acquire in the Separate Property of the other. Should either Party be required by a third party to execute a deed, conveyance, bill of sale, or other instrument conveying or encumbering the Separate Property of the other Party, then the Party so required shall sign any such instrument which may be reasonably requested or reasonably necessary to perfect title in the grantee of the Property which is sought to be conveyed or encumbered. The Party not the owner of the Property shall not be required to undertake any obligation or make any warranty in regard to such transaction.

4)    Debts of the Parties.   In regards to any debt presently owed or hereafter incurred by either Party, either individually or jointly, the Parties agree that:

a)    As to any debt presently owed by either Party individually or hereafter incurred by either Party in the Parties' individual name, any such debt shall be the sole responsibility of the Party incurring that debt. The Parties each agree that neither Party will individually contract any debt, charge, or liability for which the other Party or his or her Property or estate may become personally liable.

b)    As to any debt that may be incurred to acquire Dual-classification Property as defined in this agreement, the Parties agree that each Party will be liable for such debt in the same proportion as the ownership interest in the Dual-classification Property each Party owns and each Party shall be responsible for the payment of the Parties' proportionate share of such debt incurred.

c)    As to any debt that may be incurred in connection with Separate Property as defined in this Agreement, the Parties agree that any and all responsibility for such debt shall be the sole responsibility of the Party who owns or is acquiring that Property. In the event that any debt regarding Separate Property is incurred in the Parties' joint names, whether by reason of any guaranty or other accommodation made by the other Party, the Parties agree that the Party so accommodated shall hold the other harmless from any claim or responsibility on

Butler-Carl_King_00008                                    Butler-Carl King 00008

the indebtedness so incurred and shall fully indemnify the other Party against any claim or responsibility regarding that debt.

5)     Waiver of Rights and Claims Against Earnings and Income.   Each Party hereby waives and releases any rights or claims that the Parties might have or hereafter acquire by reason of the Parties' marriage under the present or future laws of any jurisdiction which may be applicable to this Agreement at the time of its enforcement in any salary, earnings, income, or accumulations of any nature received by either Party either before or during the Parties' marriage.   Each Party hereby acknowledges and agrees that all salary, earnings, income, or accumulations resulting from the other Party's personal services, skill, efforts and work, together with all Property acquired, directly or indirectly, or income derived therefrom shall be the Separate Property of the Party to whom such salary, earnings, income, or accumulations are attributable.

6)     Trusts.   Each Party understands and agrees that the assets owned by an irrevocable trust, including by not limited to the Collin Butler GST Trust u/a/d 8-10-2012, are generally neither Martial Property nor Separate Property of either Party, because irrevocable trust assets are not owned by the trust's settlor(s) or beneficiaries. To the extent, however, that either Party is determined to be the legal owner of a trust or trust assets, that ownership interest shall be the Separate Property of such owner.  Furthermore, to the extent that either Party is treated as having a vested property interest in any trust, as beneficiary or otherwise, such vested Property interest shall be the Separate Property of such Party. Each Party agrees that neither Party shall have any right, claim, or interest in any beneficial interest that the other Party has in an irrevocable trust under the terms of such trust.

7)     Bank Accounts.   During the marriage, either Party may open or continue to maintain the Parties' own individual separate checking account(s) in the bank(s) of the Parties' choice on which such individual, and not the other Party, may draw checks. Any business accounts maintained by either Party shall be deemed that Party's individual and separate account for purposes of this agreement.   During the marriage the Parties may open one or more joint checking accounts in the names of both Parties, and each Party may be entitled, separately, to draw checks on such account(s).

8)     Joint Ventures.   The Parties have previously and plan to continue to invest as partners in joint ventures and work together on projects including, but not limited to, developing, managing, and leasing rental real estate. The Parties agree that the ownership interest acquired in any such joint venture, whether in the form of shares of stock, membership interest in a partnership or limited liability company, title in real estate, or other similar form, shall be classified as Separate Property or Marital Property in the same manner as other Property under the Agreement, without regard to the collaborative nature of the project or investment, as if the Parties were working independently. Any collaboration with regard to such an investment shall not affect the Marital Property or Separate Property status of such Property and such Property may only be reclassified in accordance with, and as specifically provided in, that section entitled "Reclassification of Property."

9)     Waiver of Rights to Vested and Non-Vested Pension and Retirement Benefits.   Vested pension or retirement rights now owned or hereafter acquired and the expectation of

Butler-Carl King00009

vested and non-vested pension or retirement rights (including future rights) shall be the Separate Property of the title owner of the interest in such pension or retirement account or plan. Wife and Husband each waive all rights to any benefit they may acquire in the other's vested pension or retirement rights and non-vested pension or retirement rights, including death benefits, and agree that all such rights (past and future) constitute Separate Property of the title owner or such pension or retirement account or plan. Wife and Husband acknowledge that the effect of this waiver is to allow a third person or entity to obtain any and all benefits that would otherwise be his or hers as a spouse. Both Parties have made a fair and reasonable disclosure to the other Party all financial aspects relating to these plans including the plans' current worth and likely future worth. Each Party also expressly consents to the designation of the other Party's beneficiary or beneficiaries as the case may be.

If either Party files a benefit or beneficiary designation election as a participant with respect to a vested or non-vested pension or retirement plan subsequent to the date of this Agreement, then this Agreement shall, to the fullest extent possible, constitute a consent to such election. This consent and any other consent of each Party to the designation by the other Party of the beneficiary entitled to benefits, or method of payment of benefits under a pension or retirement plan of the other Party shall be deemed a further consent to any subsequent designation of a different beneficiary or method of payment of any such benefits. If an election of benefits by either Party to this Agreement is ineffective solely because of the lack of an effective consent by the other Party and benefits are paid over to the other Party, then he or she hereby agrees to pay the benefits received over to the beneficiary designated by the Party who made the otherwise ineffective election.

Each of the Parties agrees that he or she will immediately execute any waivers, contracts or other documents as may be presented to him or her by the other spouse to further manifest, reflect, or effectuate the intent of the provisions of this section entitled "Waiver of Rights to Vested and Non-Vested Pension and Retirement Benefits." Furthermore, Wife and Husband contract and agree to waive and alienate any and all right each will obtain in the future to any benefit relating to the other Party's vested or non-vested pension or retirement plans and agree to comply after their marriage with all requirements of the Employee Retirement Income Security Act (ERISA) and the Internal Revenue Code to effectuate an alienation and/or waiver of any and all rights to benefits relating to the other Party's vested or non-vested pension or retirement plans that he or she may in the future otherwise have or to any benefits he or she would otherwise receive relating to the other Party's retirement plans or pension plans. Such effectuation may include signing a waiver in accordance with ERISA or consenting to the entry of a Qualified Domestic Relations Order (i.e. QDRO) in accordance with ERISA. Each Party contracts to do so immediately at the request of the other Party.

Notwithstanding the foregoing, nothing in this Agreement shall prevent either Wife or Husband from voluntarily naming the other Party as his or her designated beneficiary or contingent annuitant for any portion or all of his or her plan benefits. Any such designation, however, shall become ineffective upon the divorce or permanent separation of the Parties, and upon divorce or permanent separation each Party shall treat any such designation as ineffective and deal with any proceeds of such designation as if such designated Party predeceased the deceased Party.

Butler-Carl_King_00010                          Butler-Carl King00010

In addition, nothing in this Agreement shall be a waiver of any plan benefit (for example, a defined benefit plan automatic qualified pre-retirement survivor annuity) that is only provided to the plan participant's spouse when there is no ability for the participant to designate another recipient of those benefits.

10)    Waiver of Rights to Spousal Support. Each of the Parties hereby waives and releases forever any and all claims and all rights of any nature that either of the Parties might have regarding support from the other. Except as specifically provided under that section entitled "Support and Maintenance," each of the Parties waives and releases any rights and claims to alimony and suit money, alimony and suit money pendente lite, separate maintenance and support, post-separation support, and attorney's fees, which either of the Parties might have or hereafter acquire by reason of the Parties' marriage under the present or future laws of any jurisdiction which may be applicable to this agreement at the time of its enforcement, including but not limited to all rights to support that might arise under the provisions of S.C. Code §§ 20-3-120, 20-3-130, 20-3-140, and 20-3-125.

11)    Possession of Residence. In the event one Party decides to permanently separate, and if at that time the Parties are residing in a residence titled solely in the separate name of either Party, then the Party in whose name the residence is titled shall remain in the residence and the other Party shall vacate upon fourteen (14) days' notice from the Party in whose name the residence is titled. In the event the residence is titled in the joint names of the Parties and the Parties cannot agree as to who will vacate the residence, then both shall vacate the residence and the residence shall be placed on the market for sale immediately and the net proceeds divided based on the classification of the residence as Separate Property, Marital Property, or Dual-classification Property, as the case may be, based on the terms of this Agreement. If neither Party remains in the jointly titled residence after a permanent separation, then each Party pending the sale of the residence shall be responsible for paying one-half, or the percentage interest owned by each Party if owned other than equally, of all mortgage payments, taxes, insurance premiums, repairs and maintenance payments associated with the residence. If one Party remains in the jointly titled residence after a permanent separation, then the Party remaining in the residence shall timely make all mortgage payments, taxes, insurance premiums, maintenance and repair payments pending a division of the residence as set forth in the section entitled "Division and Distribution of Property Upon Permanent Separation or Dissolution of Marriage" below. If the jointly titled residence is sold and the net proceeds divided, then the Party who remained in the residence after the permanent separation shall be entitled to be reimbursed at the time of the closing of the sale by the non-remaining Party (i.e. the Party who vacated the residence) in an amount equal to one-half, or the percentage interest owned by the non-remaining Party if owned other than equally, of the reduction in the principal owed on the mortgage between the date of permanent separation and the date of sale plus one-half, or the percentage interest owned by the non-remaining Party if owned other than equally, of all taxes, insurance premiums and reasonable maintenance and repair expenses. The remaining Party shall be entitled to claim for federal and state income tax purposes any interest deduction associated with his/her mortgage payments. In the event the jointly titled residence, upon the completion of the division of Property, is distributed to the non-remaining Party, then the Party who remained in the residence between the date of permanent separation and the date the Property is distributed to the non-remaining Party shall be reimbursed by the non-remaining Party in an amount equal to the principal reduction in the mortgage plus any taxes, insurance premiums and reasonable

maintenance and repair expenses paid during the period between the date of permanent separation and the date of distribution. In the event the residence is distributed in kind to the remaining Party, then the remaining Party shall not be entitled to any reimbursement for any payments made associated with the residence.

12) <u>Division and Distribution of Property Upon Permanent Separation or Dissolution of Marriage.</u> The Parties agree that if the Parties permanently separate after the Parties are married or if the Parties' marriage is dissolved by reason of a judgment of divorce or other judicial decree (hereinafter "dissolution of marriage"), then the Parties' Property shall be divided and distributed as follows:

a) Each Party shall retain the Parties' respective Separate Property, free of any claim or right of any nature of the other Party.

b) All of the Marital Property belonging to the Parties shall be divided equally between the Parties within a reasonable time after the date of permanent separation. Insofar as possible, Property shall be divided in kind, with each Party retaining an equal amount of Marital Property determined by the "net value" of the Property. The determination of the net value of Marital Property requires consideration of and a reduction for any outstanding liens, encumbrances or charges against the Property, and any deferred tax liability due to unrealized gain on the Property.

c) If a reconciliation should occur after permanent separation and prior to dissolution of marriage, and should any Marital Property have been divided between the Parties prior to such reconciliation, then the Marital Property received by either Party as a result of the division shall become the Parties' respective Separate Property upon such division and shall remain so classified upon reconciliation and thereafter.

13) <u>Support and Maintenance.</u> We agree to the following terms relating to support and maintenance.

a) The Parties agree that Husband shall be entitled to receive from Wife certain Property (the "Support Payment") in accordance with the following schedule:

i) In the event that the Parties have been married for two (2) years or less and the permanent separation occurs on or before the Parties' second (2nd) anniversary, Wife shall pay to Husband an amount equal to the lesser of (i) five percent (5%) of the fair market value of her Separate Property or, (ii) Two Hundred Fifty Thousand Dollars ($250,000); or

ii) In the event that the Parties have been married for more than two (2) years and the permanent separation occurs after the Parties' second (2nd) anniversary, Wife shall pay to Husband an amount equal to the lesser of (i) ten percent (10%) of the fair market value of her Separate Property or, (ii) Five Hundred Thousand Dollars ($500,000).

b)      The Support Payment obligation may be satisfied in cash or in kind. The Support Payment shall be a one-time payment, but which may be made in installments with the final installment payment to be made no later the second (2nd) anniversary of the permanent separation. The installments shall be made no less frequently than annually with the first payment due on the first day of the fifth (5th) month following the date of permanent separation. Wife may elect to accelerate any such payments in her sole discretion.

c)      All payments described in subsections (a) and (b) of this section are conditioned on the Parties continuing to live separate and apart during the period of time that the payments are being made. In the event of a reconciliation of the Parties (i.e., a resumption of their living together), then any unpaid portion of the Support Payment as of the date of reconciliation shall be treated as satisfied in full and Wife shall have no further obligation to make any additional payment under this section entitled "Support and Maintenance." Should, however, there be a subsequent permanent separation, then within four (4) months following commencement of such subsequent permanent separation, Wife shall resume payments as required herein, except that Wife shall have no less than one (1) year in which to pay any unpaid portion of the Support Payment. Regardless of the number of permanent separations and reconciliations, in no event shall Wife be required to pay spousal support in excess of the amount determined under subsection (a) upon the first permanent separation.

d)      If cash, any payments made to satisfy the Support Payment from Wife to Husband are includible in Husband's gross income under section 71 of the Internal Revenue Code of 1986, or its successor, and said payments shall be reported as income by Husband on Husband's tax returns (both federal and state) and shall be fully deductible to Wife on her tax returns (both federal and state) as an adjustment to income or as otherwise provided by law, including section 215 of the Internal Revenue Code. Payment may be made in property if mutually agreed.

14)     Waiver of Other Rights of Property Division. The Parties agree that this Agreement shall serve as an agreement entered into pursuant to the provisions of S.C. Code §§ 20-3-620(b)(2)(B) and 20-3-630(A)(4) by which the Parties have provided for distribution upon permanent separation or marital dissolution of all Property and that the distribution as provided for in this Agreement is equitable. The Parties both further agree and confirm that under no circumstances shall any of the Parties' Separate Property be subject to distribution or consideration in any manner under any law that may be applicable to the Parties or this Agreement at the time of its enforcement.

15)     Prior Designations Ineffective Upon Permanent Separation or Divorce. Each Party agrees that any beneficial designation, appointment to a position, or power conferred in a last will and testament, revocable trust, power of attorney, health care power of attorney, retirement plan, insurance policy, or any other similar contract or document ("Designation") made by one Party in favor of the other Party prior to a permanent separation or marital dissolution shall be ineffective upon such permanent separation or marital dissolution. Each Party agrees that the Parties shall carry out any acts, including but not limited to executing

Butler-Carl King00013

releases, waivers, or consents or transferring money or other Property in a way that reflects such Designation being ineffective.

16)     Fixed Bequest Upon Death.  The Parties agree that in the event of the death of the predeceasing Party while the Parties are married, and provided they are living together and are not permanently separated as defined in Article I, section 8 at such time, the surviving Party shall receive the following:

a)     All interest in, and rights and title to, the IOP Residence which is held by the predeceasing Party or the predeceasing Party's estate, and such Property shall be received free and clear of any mortgage or other encumbrance. The estate of the predeceasing Party shall satisfy any mortgage or other encumbrance on the IOP Residence to the extent not fully satisfied by the proceeds of any insurance policy (whether on the life of the predeceasing Party or otherwise) which was purchased for this purpose. Notwithstanding the foregoing, such right to the IOP Residence shall not include the right to any tangible personal Property which was Separate Property of the predeceasing Party that may be located in the IOP Residence, therefore such Property may otherwise be disposed of under the provisions of the will, trust or other valid testamentary document executed or established by the predeceasing Party.

b)     Outright and free of trust, Property by operation of law, by will, trust, or beneficiary designation, or a combination thereof, in the minimum amount of ten percent (10%) of the value of the predeceasing Party's estate valued as of the date of such Party's death. The "predeceasing Party's estate" shall include only that Property, which is subject to the predeceasing Party's will or revocable trust, or which passes by intestacy, reduced by funeral and administration expenses, and enforceable claims.

Any Property received by the surviving Party as a result of the predeceasing Party's death, whether by operation of law, by will or trust established by the predeceasing Party, by intestacy, or as proceeds of a life insurance policy, annuity contract, or a retirement plan, shall be credited against the minimum amount due to the surviving Party under subsection (b) above, but shall in no way affect any interest in the IOP Residence described in subsection (a) above. The obligations set forth in this section entitled "Fixed Bequest Upon Death" shall be a claim on the predeceasing Party's estate until satisfied.

17)     Waiver of Rights as Surviving Spouse.  Except as otherwise expressly provided by the terms of this Agreement, each Party waives and releases any rights and claims that either Party might acquire as a surviving spouse in the Property or estate of the other under the present or future laws of any jurisdiction, including, but not limited to:

a)     The right to a share in the estate of the other in the event of intestacy of either Party as provided by the provisions of S.C. Code § 62-2-102, any successor statute, or other applicable law.

Butler-Carl King00014

b)    The right to claim an elective share as provided by S.C. Code § 62-2-201, any successor statute, or other applicable law.

c)    The right to a year's allowance or support upon the death of the other Party as may be provided by applicable law.

d)    The right to serve as administrator or executor of the estate of the other upon the other's death as provided by S.C. Code § 62-3-203, any successor statute, or other applicable law, except as either Party may, at his or her sole option, name the other as personal representative or executor of his or her estate.

e)    Any claims of dower or curtesy, inchoate, or otherwise, and any right to community Property or quasi-community Property.

18)    Wife's Portability Election. If Husband and Wife are married at the time of Wife's death and if Husband survives Wife, Wife agrees that the executor of her estate will be authorized and required to sign and file a Form 706 (a "federal estate tax return") and all other documents necessary to make the election under IRC § 2010(c)(5)(A) (the "portability election") upon Husband's request. Wife hereby acknowledges that this agreement constitutes a contract to make a will containing provisions to this effect. In the event such portability election is made, Husband agrees to pay or reimburse Wife's estate for the costs of preparing the federal estate tax return, including reasonable accountant's and attorneys' fees.

19)    Husband's Portability Election. If Wife and Husband are married at the time of Husband's death and if Wife survives Husband, Husband agrees that the executor of his estate will be authorized and required to sign and file a federal estate tax return and all other documents necessary to make the portability election upon Wife's request. Husband hereby acknowledges that this agreement constitutes a contract to make a will containing provisions to this effect. In the event such portability election is made, Wife agrees to pay or reimburse Husband's estate for the costs of preparing the federal estate tax return, including reasonable accountant's and attorneys' fees.

20)    Future Gifts and Bequests. The Parties agree that, during the Parties' lifetimes, each Party shall have the right, if the Parties so choose, to do any of the following, (i) to make gifts to the other as specifically provided in the section entitled "Reclassification of Property," (ii) to make a last will and testament or trust benefitting the other, (iii) to name the other as personal representative of the Parties' respective estates, (iv) to name the other as trustee of the Parties' respective revocable trusts, or (v) to name the other as an attorney-in-fact or health care agent. Nothing in this Agreement shall be construed to prevent either Party from making such a last will and testament or revocable trust, from naming the other as a beneficiary of any insurance policy, from receiving any such bequest, or from acting in the capacity designated by the other in his or her last will and testament, revocable trust, power of attorney or health care power of attorney. Notwithstanding anything else in this section entitled "Future Gifts and Bequests," any such designation, bequest, or appointment by one Party of the other Party shall immediately become ineffective if the Parties are permanently separated or divorced, and each Party shall do anything necessary to treat such designation, bequest, or appointment as ineffective.

Butler-Carl King00015

**ARTICLE III**
**GENERAL PROVISIONS**

1)     Execution of Additional Documents. The Parties agree that each Party will, at the request of the other Party, or the heirs, devisees or personal representatives of the other Party, immediately execute and deliver whatever additional instruments may be required to effectuate the purpose and intent of this Agreement, including any deeds or other documents required in order that good title to any Property may be conveyed by either Party free from any claim of the other acquired by reason of the Parties' marriage. Each Party agrees to forthwith execute, have notarized and deliver to the other, with full authority to record the same, a Memorandum of Premarital Agreement in the form and content of "Exhibit A" attached hereto and incorporated herein by this reference.

2)     Non-waiver. The failure of either Party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature; nor shall it affect the rights of either Party to claim strict performance of any other portion of this Agreement.

3)     Settlement of Disputes; Arbitration. In the event of a permanent separation initiated by either Party as a Party to this Agreement, the Parties shall confer within sixty (60) days following the date of such permanent separation and attempt to agree on the following: (i) a determination of what is "Marital Property" and what is "Separate Property" under the terms of this Agreement; (ii) an equal division in value of any "Marital Property" accumulated during the marriage, and (iii) any other distribution or allocation under the terms hereof. In the event of any disagreement regarding the interpretation or effect of this Agreement (including, without limitation, any disagreement regarding support, the classification of any Property as "Marital Property" or "Separate Property" or the equal division in value of "Marital Property"), then the following provisions shall apply:

a)     The Parties agree that:

i)     Except as provided in subsection (a)(ii) of this section, below, any dispute of any kind concerning the enforcement, interpretation, implementation, and/or effect of this Agreement, including but not limited to those disputes specifically described in this section entitled "Settlement of Disputes; Arbitration," shall be submitted to arbitration pursuant to the South Carolina Uniform Arbitration Act in effect as of the date of the execution of this Agreement, as may be modified by the terms and conditions set forth in this this section entitled "Settlement of Disputes; Arbitration;"

ii)     Any challenge to the overall enforceability of this Agreement may not be decided by an arbitrator but shall be decided by a court of competent jurisdiction. Any action taken by a Party to seek affirmation as to the enforceability of this Agreement through a court shall not alter, waive, or supersede the requirement that the issues in subsection (a)(i) of this section, above, shall be decided by arbitration.

b)    There shall be a single arbitrator. The arbitrator may be any person mutually agreeable to the Parties. In the absence of agreement, the arbitrator shall be either a retired South Carolina Family Court Judge, South Carolina District Court Judge or South Carolina Court of Appeals judge with substantial experience in family law cases or a South Carolina resident who has been certified as an arbitrator by the American Academy of Matrimonial Lawyers ("AAML") or other organization which certifies arbitrators in family law cases. If there is no one meeting such criteria, then the arbitrator shall be any South Carolina Fellow in the AAML or Attorney licensed in South Carolina who is a Board Certified Specialist in the area of Family Law. The arbitrator shall be selected as follows:

    i)    The Party demanding arbitration shall designate a proposed arbitrator in his/her written notice demanding arbitration.

    ii)    If one Party does not accept the proposed arbitrator, then the other Party shall respond in writing within ten (10) days and shall propose three other persons as potential arbitrators.

    iii)    The Party demanding arbitration shall select one of the three persons proposed by the other Party to be the arbitrator. If that person is unable or unwilling to serve or does not respond, then the Party demanding arbitration shall select one of the other two persons as the arbitrator.

c)    Within thirty (30) days after the selection of the arbitrator, the person making a demand for arbitration ("Claimant") shall file his or her claim with the arbitrator. The other Party ("Respondent") shall file and serve an answer and any counterclaim within thirty (30) days thereafter. Claimant shall file and serve a reply to the counterclaim within thirty (30) days thereafter. Failure to file an answer to Claimant's claim by Respondent or failure to file a reply to Respondent's counterclaim by Claimant shall be treated as a denial of the claim. Dispositive motions and/or affirmative defenses (e.g., failure to state a claim for which relief can be granted, payment, statute of limitations, breach of fiduciary duty, etc.) must be made within thirty (30) days after receiving the claim or a counterclaim and may be included in the answer to the claim or in the reply to the counterclaim.

d)    The arbitrator will decide the issues raised in the claim, answer and counterclaim, and reply to counterclaim, all of which relate to disputes between the Parties regarding the interpretation, effect and/or enforcement of this Agreement. The arbitrator shall not be entitled to arbitrate any disputes that arise outside the interpretation, effect and/or enforcement of this Agreement unless the Parties specifically agree otherwise.

e)    The South Carolina Code of Ethics for Arbitrators shall apply to this Agreement.

f)    The arbitration shall be conducted pursuant to South Carolina state law and the provisions of this Agreement.

Butler-Carl King00017

g) The arbitration shall be conducted in Charleston County, South Carolina at the law offices of the arbitrator or at such other place or places of arbitration as the arbitrator shall designate in Charleston County, South Carolina.

h) Arbitration hearing(s) shall take place on the date designated by the arbitrator after conducting discussions with counsel for the Parties or the Parties directly if he/she is not represented by counsel. Each Party shall be entitled to a reasonable amount of time to conduct discovery and to retain expert witnesses prior to the arbitration hearing being conducted.

i) Each Party shall be entitled to conduct such discovery as he or she is or would be entitled under the South Carolina Rules of Civil Procedure. The arbitrator shall supervise discovery and shall resolve all discovery disputes including, but not limited to, motions to compel, motions for protective order, motions for award of attorneys' fees and/or costs, etc.

j) After the Parties have had a reasonable opportunity to conduct discovery and prior to the arbitration hearing, the Parties shall participate in a mediated settlement conference to attempt to resolve any or all of the issues set forth in the claim, answer and counterclaim, and reply. The Parties shall attempt to agree on a mediator. In the event the Parties are unable to agree on a mediator, the arbitrator shall appoint a mediator. Each Party shall be responsible for one-half of the mediator's fees.

k) The following shall apply concerning evidence and procedure at the arbitration hearing:

  i) The Parties may offer such evidence as is relevant and material to the dispute and shall produce evidence that the arbitrator deems necessary to an understanding and determination of the dispute;

  ii) The arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon a Party's request or independently. The attorneys for the Parties shall also be entitled to issue subpoenas to witnesses or for the production of documents consistent with the South Carolina Rules of Civil Procedure;

  iii) The arbitrator shall be the judge of the relevance and materiality of the evidence offered;

  iv) The Rules of Evidence and Civil Procedure shall be general guides to be followed by the arbitrator in conducting the hearing(s). The arbitrator has the discretion to waive or modify these rules to permit efficient and expeditious presentation of the case. The rules of privilege shall apply as in civil actions;

Butler-Carl_King_00018      Butler-Carl King00018

v)      Evidence shall be taken in the presence of the arbitrator and all Parties, except where a Party is absent, in default or has waived the right to be present;

vi)      The arbitrator in his or her discretion may receive and consider evidence of witnesses by affidavit but shall give this evidence only such weight as the arbitrator deems it is entitled after considering objections to its admission; and

vii)      If the Parties agree or the arbitrator directs that documents or other evidence be submitted to him or her after the hearing, the documents or other evidence shall be filed with him or her. All Parties shall be afforded an opportunity to examine such documents or other evidence and a reasonable opportunity to submit rebuttal evidence.

l)      Counsel for the Parties shall make arrangements for a court reporting service to appear and transcribe the evidence of the arbitration proceedings. The Parties shall equally share the cost of the services of the court reporting service and for obtaining copies of the stenographic record, if necessary.

m)      The cost of arbitration shall be as follows:

i)      Each Party shall be responsible for one-half of the fees and expenses of the arbitrator;

ii)      Each Party shall be responsible for one-half of the cost for the services of any court reporting service; and

iii)      Subject to the provisions of the section entitled "Counsel Fees" below, each Party shall be responsible for paying his or her own attorney's fees and other costs of the arbitration.

n)      The arbitrator shall determine the issue(s) promptly following the closing of the hearing and issue an award no later than thirty (30) days from the date of closing of the hearing. The arbitrator's award shall be consistent with the terms of this Agreement and shall not award either Party more Property and/or money than is provided in this Agreement.

o)      The arbitrator's ruling (award) shall be in writing and dated and shall be signed by the arbitrator with a statement of the place(s) where the arbitration was conducted and where the decision was made. It shall set forth the reasons upon which it is based and shall include findings of fact and conclusions of law in support of the arbitrator's award. Any award rendered by the arbitrator shall be final, and judgment may be entered upon and in accordance with applicable law, in any court having jurisdiction.

Butler-Carl King00019

p)    The arbitrator shall deliver a copy of the decision (award) to each Party's counsel, or to each Party if a Party is not represented by counsel, at approximately the same time.

q)    Judicial review of errors of law by the arbitrator shall be permitted.

r)    The Parties shall faithfully abide by and perform in accordance with the arbitrator's award.

4)    Complete Agreement. This Agreement is signed, executed and acknowledged in duplicate, with an executed copy being retained by each Party. This Agreement contains the Parties' entire understanding, and no other representations, warranties, promises, or covenants have been made by either Party to the other. All agreements, oral and written, of the Parties with regard to the subject matter hereof are contained herein. All prior and contemporaneous conversations and negotiations with respect to the subject matter hereof are waived and merged herein and superseded hereby.

5)    Application to Present and Future Property. This Agreement shall apply to all of the Property now owned by either Party, and also to any and all Property which may hereafter be acquired and owned by either Party regardless of the nature, location, or future value of said Property.

6)    Contingent Upon Marriage. This Agreement shall be effective only upon the Parties' marriage, and if such marriage does not take place, this Agreement shall be null and void.

7)    Assignment Prohibited. This Agreement is personal to each Party, and neither Party may assign or delegate any of its rights or obligations.

8)    Binding Effect. This Agreement shall be binding upon the Parties and on the Parties' respective heirs, devisees, personal representatives, and assigns. This Agreement may be pled in bar of any action or proceeding for the recovery of the rights or estates herein waived and released by either Party and the Parties' respective heirs, devisees, personal representatives or assigns.

9)    Applicable Law. This Agreement is made and entered into under the laws of the state of South Carolina, and this Agreement shall at all times be governed by and interpreted under the laws of the State of South Carolina. South Carolina law shall apply to the validity, enforcement, and construction of this Agreement.

10)    Jurisdiction and Venue. The Parties hereby stipulate and agree that venue in any action filed under the terms of this Agreement shall be in the Family Court in the State of South Carolina and in the County of Charleston (provided that at least one Party is a resident of Charleston County, South Carolina at the time such action is filed). The Parties hereby submit to the jurisdiction of such court. In the event that neither Party is a resident of Charleston County at the time such action is filed, then the Parties agree that such action shall be instituted in the Family Court in the State of South Carolina, and the venue of such action shall be determined in accordance with South Carolina law. The Parties hereby submit to the jurisdiction of such court.

The Parties agree that they shall not raise any defense or objection to the lawful jurisdiction of such court in the State of South Carolina and that they shall not attempt the removal of any such court action to another court, whether state or federal.

11) Severability. Should any provision of this Agreement be declared invalid for any reason, such provision shall be severed and all other provisions of this Agreement shall continue to be effective and binding. The Parties intend that all provisions of this Agreement be binding upon the Parties without regard to their legal enforceability.

12) Effect of Titles and Captions. The titles or captions given to the articles or sections in this Agreement have been utilized solely for the purposes of convenience; and in no event shall any such title or caption define, limit, extend, or describe the scope of this Agreement or any of its provisions. For all purposes of this Agreement, the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular, wherever appropriate to the context.

13) Amendments. No modification, rescission, or amendment to this Agreement shall be effective unless made in writing and executed by the Parties with the same formality as this Agreement.

14) Voluntary Execution. The Parties each acknowledge that this Agreement is entered into of the Parties' own free will and volition and that no coercion, force, pressure, or undue influence has been used against either Party in the execution of this Agreement, either by the other Party or by any other person or persons. Neither Party has relied upon any representation or promise in making this Agreement except those expressly set forth herein. The Parties hereby acknowledge and warrant that this Agreement is not obtained through fraud, duress, or mistake, or through misrepresentation or nondisclosure of material facts, that this Agreement is not unconscionable and is fair and reasonable to both Parties, and that the Parties do not foresee or anticipate that any facts or circumstances may change after execution of this Agreement, so as to make its enforcement unfair or unreasonable.

15) Representation by Counsel. Each Party has had the right and ability to consult with independent counsel of the Parties' own choice. The Parties have each been fully advised to the extent desired of the Parties' rights and obligations arising from the Parties' marital relationship. The Parties acknowledge that both the legal and practical effects of this Agreement have been fully explained to the Parties by the Parties' respective counsel. Husband has been represented by John G. Brown, II of Brown & Varnado, LLC, and Wife has been represented by Carl L. King and Megan H. Warren, of Culp Elliott & Carpenter, PLLC, in consultation with William L. Mills, IV of Culp Elliott & Carpenter, PLLC.

16) Waiver of Right to Additional Financial Disclosure. Each Party acknowledges that a fair and reasonable financial disclosure has been made by the other Party contemporaneously with the execution of this Agreement, and each Party acknowledges that such financial disclosure has been fully explained to each Party. Such financial disclosures are attached as schedules to this Agreement. Each Party hereby voluntarily waives the right to any additional disclosure of the Property or financial obligations of the other Party.

17)     Confidentiality. Except as otherwise specifically provided herein, each Party and the Parties' respective attorneys hereby agree to keep the terms of this Agreement and the financial schedules contained herein strictly confidential and that no part of this Agreement or financial schedules contained herein shall be recorded in any public registry except as otherwise provided for a Memorandum of Premarital Agreement pursuant to and in accordance with the provisions of the section of this Agreement entitled "Execution of Additional Documents." Notwithstanding the foregoing, either Party may disclose the terms of this Agreement and the financial schedules contained herein during the Parties' lives to the Parties' attorneys or agents, and upon disclosure such attorneys or agents shall be bound by the terms of this Agreement, including but not limited to this confidentiality provision. At the death of either Party, the terms of this Agreement may be disclosed to the executor of the deceased Party's estate and to third-party beneficiaries of this Agreement to the extent necessary to protect the rights of such deceased Party's estate or third-party beneficiaries hereunder.

18)     Party Acknowledgments. Each Party verifies that: (a) each Party has signed this Agreement voluntarily; (b) each Party believes this Agreement to be fair and equitable and in no way unconscionable; (c) each Party has been provided by the other a fair and reasonable disclosure of Property or financial obligations of the other; (d) each Party voluntarily and expressly waives any right of other disclosure as to the Property or financial obligations of the other Party; (e) each Party has an adequate knowledge of the Property or financial obligations of the other Party; and (f) each Party believes that this Agreement was not obtained through fraud, duress, mistake, or through misrepresentation or nondisclosure of material facts.

Wife is acquainted with the businesses and resources of Husband. Husband is acquainted with the businesses and resources of Wife. Each has examined the summary financial statements of the other, which are attached as "Exhibit B." Wife acknowledges that the present estimated net worth of Husband may be between $_____ or several times more than that, exclusive of Husband's potential gifts and inheritances from family, and the assets and income of trusts of which Husband is a beneficiary, and could in years to come substantially exceed that amount. Husband acknowledges that the present estimated net worth of Wife may be between $_____ or several times more than that and could in years to come exceed that amount. Wife understands and acknowledges that by signing this Agreement, Wife will receive, in the event of Husband's death, a sum perhaps substantially less than that which Wife would otherwise be entitled to receive and further, that in the event of a separation of the Parties or a divorce of the Parties, Wife will perhaps receive a sum substantially less than Wife might otherwise recover in an action against Husband for support and division of Property. Husband understands and acknowledges that by signing this Agreement, Husband will receive, in the event of Wife's death, a sum perhaps substantially less than that which Husband would otherwise be entitled to receive and further, that in the event of a separation of the Parties or a divorce of the Parties, Husband will perhaps receive a sum substantially less than Husband might otherwise recover in an action against Wife for support and division of Property. Each Party has seriously considered these factors as well as their feelings for each other in making the decision to become married as well as to execute this Agreement.

**EACH PARTY IS FULLY SATISFIED WITH THE DISCLOSURES THAT HE OR SHE HAS RECEIVED, AND, IS SATISFIED WITH THE DISCLOSURES. EACH PARTY EXPRESSLY WAIVES ALL RIGHT TO ANY ADDITIONAL DISCLOSURES BEYOND**

**THE DISCLOSURES PROVIDED HEREIN AND ON THE SCHEDULES ATTACHED HERETO.**

Neither Party has threatened, coerced or otherwise engaged in any type of duress to obtain the other Party's signature to this Agreement. Both Parties sign this document voluntarily with a full understanding of the nature and consequences of this Agreement. Each Party, in addition to signing their name at the end of this Agreement, has signed their initials below this section on the line indicated as a further affirmation of the above mutual disclosures and understandings.

_____          _____
Husband                                      Wife

19)    Counsel Fees.    In the event it becomes necessary to institute legal action to enforce compliance with the terms of this Agreement or by reason of the breach by either Party of this Agreement, the Parties agree that each Party will initially be responsible for their own legal fees and costs, including fifty percent (50%) of all common legal fees and costs. The Parties further agree that at the conclusion of such legal proceeding, the substantially losing Party (i.e. the Party ordered to perform or comply with the terms of the Agreement) shall be solely responsible for all legal fees and costs incurred by the other Party, such fees and costs to be taxed by the court or arbitrator having jurisdiction. The amount so awarded shall be in the sole discretion of the presiding judge or arbitrator and the award shall be made without regard to the financial ability of either Party to pay, but rather shall be based upon the fees and expenses determined by the court or arbitrator to be reasonable and incurred by the substantially prevailing Party. It is the intent of this section to induce both Husband and Wife to comply fully with the terms of this Agreement to the end that no litigation or arbitration as between these Parties is necessary in the areas dealt with by this Agreement. In the event of litigation, it is the further intent to specifically provide that the substantially losing Party pay all reasonable fees and costs that either side may incur.

20)    Specific Performance.    Either Party shall have the right to compel the performance of the provisions of this Agreement by suing for specific performance in the courts where jurisdiction of the Parties and subject matter exists or in an arbitration proceeding as contemplated herein. Such right to compel performance in court shall not waive or affect the requirement that all issues contemplated in the section entitled "Settlement of Disputes; Arbitration," above, be decided according to the provisions of that section. Both Parties acknowledge that neither Party has a plain, speedy or adequate legal remedy to compel compliance with the provisions of this Agreement, that neither Party should be required to repeatedly file suit for any breach of this Agreement, that this Agreement is fair and equitable to both Parties and that an order of specific performance enforceable by contempt is an appropriate remedy for a breach by either Party.

21)    Execution in Counterparts.    This Agreement may be executed in two or more counterparts, each of which shall be an original but all of which shall constitute one and the same instrument.

(Signatures Appear on Following Page)

Butler-Carl_King_00023                                      Butler-Carl King00023

IN WITNESS WHEREOF, the Parties have hereunto set the Parties' respective hands as of the day, month, and year first above written.

_____(SEAL)
PATRICK J. KELLY

_____(SEAL)
SUSAN A. BUTLER

Butler-Carl_King_00024

Butler-Carl King00024

STATE OF SOUTH CAROLINA    )
                           )
COUNTY OF CHARLESTON       )

I certify that PATRICK J. KELLY personally appeared before me this day and acknowledged to me that he signed the foregoing document:

Date: October 7, 2015

(Official Seal)

STATE OF SOUTH CAROLINA    )
                           )
COUNTY OF CHARLESTON       )

_____
Official Signature of Notary

Lauren Richardson, Public
Notary's Printed or Typed Name

My commission expires: 7/28/18

I certify that SUSAN A. BUTLER personally appeared before me this day and acknowledged to me that she signed the foregoing document:

Date: October 7, 2015

(Official Seal)

_____
Official Signature of Notary

Lauren Richardson Public
Notary's Printed or Typed Name

My commission expires: 7/28/18

## RECEIPT AND ACKNOWLEDGMENT

I, PATRICK J. KELLY, do hereby acknowledge that I have received on this date an executed duplicate original of the Premarital Agreement, including the attached schedules disclosing SUSAN A. BUTLER income, assets, and liabilities and such disclosures are satisfactory to me.

Date: September ___, 2015

_____
PATRICK J. KELLY

26

Patrick J. Kelly

Susan A. Butler

## RECEIPT AND ACKNOWLEDGMENT

I, SUSAN A. BUTLER, do hereby acknowledge that I have received on this date an executed duplicate original of the Premarital Agreement, including the attached schedules disclosing PATRICK J. KELLY's income, assets, and liabilities and such disclosures are satisfactory to me.

Date: September __ 2015

_____
SUSAN A. BUTLER

Patrick J. Kelly

Susan A. Butler

27

## ACKNOWLEDGMENT OF COUNSEL

I, SUSAN A. BUTLER, acknowledge that I have been represented by Carl L. King and Megan H. Warren of Culp Elliott & Carpenter, PLLC, in consultation with William L. Mills, also of Culp Elliott & Carpenter, PLLC in Esquire in connection with this Premarital Agreement. I acknowledge that I had the right and ability to consult with independent counsel of my own choice and that I have been fully advised to the extent desired of my rights and obligations arising from my marital relationship with PATRICK J. KELLY. I further acknowledge that both the legal and practical effects of this Premarital Agreement have been fully explained to me by my counsel. I have been advised, and understand, that by entering into this Premarital Agreement, I may be foregoing certain rights which I would otherwise be entitled to have under the applicable laws, and have been advised of my rights and responsibilities under this Premarital Agreement.

Date: September ___, 2015

_____
SUSAN A. BUTLER

28

Patrick J. Kelly

Susan A. Butler

## ACKNOWLEDGMENT OF COUNSEL

I, PATRICK J. KELLY, acknowledge that I have been represented by John G. Brown, II of Brown & Varnado, LLC in connection with this Premarital Agreement. I acknowledge that I had the right and ability to consult with independent counsel of my own choice and that I have been fully advised to the extent desired of my rights and obligations arising from my marital relationship with SUSAN A. BUTLER. I further acknowledge that both the legal and practical effects of this Premarital Agreement have been fully explained to me by my counsel. I have been advised, and understand, that by entering into this Premarital Agreement, I may be foregoing certain rights which I would otherwise be entitled to have under the applicable laws, and have been advised of my rights and responsibilities under this Premarital Agreement.

Date: September ____, 2015

_____
PATRICK J. KELLY

29

Patrick J. Kelly

Susan A. Butler

## EXHIBIT A

STATE OF SOUTH CAROLINA     )
                                   )

COUNTY OF CHARLESTON      )

### MEMORANDUM OF PREMARITAL AGREEMENT

THIS **MEMORANDUM OF PREMARITAL AGREEMENT** is executed this __ day of September, 2015, by and between PATRICK J. KELLY ("Husband"), a male citizen and resident of Charleston County, South Carolina, and SUSAN A. BUTLER ("Wife"), a female citizen and resident of Charleston County, South Carolina (Husband and Wife may be collectively referred to as the "Parties" or individually as a "Party").

PATRICK J. KELLY and SUSAN A. BUTLER have executed a Premarital Agreement (the "Agreement") dated the __ day of September, 2015, and they are the only Parties to the Agreement. The Agreement provides, in part, that the Parties shall be free traders with respect to real and personal property, and that each Party shall have the right to acquire, hold, lease, encumber, sell and convey, and to generally deal in real and personal property without the knowledge, consent, or joinder of the other Party, as freely and completely as if he or she were unmarried. Each Party has agreed to waive, release and quitclaim forever unto the other Party (1) any and all right to share in the estate of the other Party upon that Party's death under S.C. Code § 62-2-102 or other applicable law, and the right to administer the other Party's estate under S.C. Code § 62-3-203 or other applicable law (2) any and all rights arising out of any action for equitable apportionment or equitable distribution under S.C. Code § 20-3-620 or other applicable law (3) any and all rights arising from community property laws of any state, and (4) any and all right to an elective share in the other Party's property under S.C. Code § 62-2-201. Each reference to a specific statute in the preceding sentence shall also refer to any similar or successor statutes and similar statutes in any other state. The Parties desire to avoid the burden of each spouse having to repeatedly join in the execution of conveyances and other instruments affecting the real property of the other Party in order to accomplish a waiver of the marital rights enumerated above. The execution and recordation of this Memorandum shall serve as a waiver by each Party of such marital rights, and also shall constitute execution of conveyances and other instruments affecting real property of the other Party in South Carolina and any other state just the same as if each Party had joined in the actual execution of such conveyances and instruments executed by the other Party.

[Signatures Appear on Following Page]

A-1

Butler-Carl_King_00030

Butler-Carl King00030

**IN TESTIMONY WHEREOF,** the Parties hereto have set their hands and seals, all as of the day and year first above written.

_____(SEAL)
PATRICK J. KELLY

_____(SEAL)
SUSAN A. BUTLER

STATE OF SOUTH CAROLINA    )
                           )
COUNTY OF CHARLESTON       )

I, Lauren Richardson Public, a Notary Public for said County and State, do hereby certify that PATRICK J. KELLY personally appeared before me this date and acknowledged the due execution of the foregoing Memorandum of Premarital Agreement.

Date: September 7, 2015

_____
Official Signature of Notary

Lauren Richardson Public
Notary's Printed or Typed Name

My commission expires: 7/28/18

(Official Seal)

A-2

STATE OF SOUTH CAROLINA          )
                                 )
COUNTY OF CHARLESTON             )


I, Lauren Richardson Plexico, a Notary Public for said County and State, do hereby certify that SUSAN A. BUTLER personally appeared before me this date and acknowledged the due execution of the foregoing Memorandum of Premarital Agreement.

Date: October 7, 2015

_____
Official Signature of Notary

Lauren Richardson Plexico
Notary's Printed or Typed Name

My commission expires: 7/28/18

(Official Seal)

A-3

Butler-Carl_King_00032                    Butler-Carl King00032

**Exhibit B**

Summaries of the Parties' assets, incomes, and liabilities appear below.

**SCHEDULE OF**
**ASSETS, LIABILITIES, AND INCOME**
**OF HUSBAND**

| Assets | | FMV |
|---|---|---|
| 1 | Automobile | $12,000 |
| 2 | Home Furnishings (need estimated value) | $5000 |
| 3 | Jewelry (need estimated value) | $8000 |
| 4 | Cash | $10000 |
| 5 | Life Insurance Policy, Policy No.: XXXXX | $ |
| 6 | IRA | $50,000 |
| 7 | 401(k) | $ |
| 8 | | |
| 9 | | |
| | Total Assets | $85,000 |
| **Liabilities** | | |
| 1 | Mortgage | $0 |
| 2 | Taxes | $25,000 |
| 3 | | |
| | Total Net Worth | $60,000 |
| **Income** | | |
| | Adjusted gross income for 2014 as reported on individual income tax return, IRS Form 1040 | $31,000*** |
| | ***Investment losses and carryover from previous years. | |

Butler-Carl_King_00033

Butler-Carl King00033

## SCHEDULE OF
## ASSETS, LIABILITIES, AND INCOME
## OF WIFE

| Assets | | FMV* |
|---|---|---|
| 1 | Automobile Owned | $0.00 |
| 2 | Home Furnishings | $5,000 |
| 3 | Jewelry | $50,000 |
| 4 | Cash | $72,071 |
| 5 | Life Insurance | $0.00** |
| 6 | IRA | $0.00 |
| 7 | 401(k) | $925,000 |
| 8 | Marketable Securities (Investment Account) | $3,198,876 |
| | | |
| 9 | Closely Held Business Interests | |
| 9(a) | Cutty Co, LLC- Greenville SC (50% Ownership) | $175,000 |
| 9(b) | Cutty Co, LLC- Carolina Walk Condo (100% Ownership) | $~~200,000~~ 125,000 |
| 9(c) | Cutty Co, LLC- Sumter Property (50% Ownership) | $~~375,000~~ 300,000 |
| 9(d) | Westowne, LLC- West Columbia Property (50% Ownership) | $850,000 |
| 9(e) | Cutty Co, LLC- Mt Pleasant Property (50% Ownership) | $930,000 |
| | | |
| 10 | Real Estate-Personal and Commercial | |
| 10(a) | Adesso Condo, Columbia, SC | $350,000 |
| 10(b) | 108 Cherokee Ct, Lexington, SC | $1,125,000 |
| | Total Assets | $8,255,947 |
| | | |
| Liabilities | | |
| 1 | Cutty Co, LLC- Mt. Pleasant Property | $650,000 |
| 2 | Westowne, LLC- West Columbia Property | $475,000*** |
| 3 | U.S. Trust- Mortgage | $880,000 |
| 4 | U.S. Trust- Private Client Line | $1,006,989 |
| | Total Liabilities | 3,011,989 |
| | Total Net Worth | $5,243,958 |
| | | |
| Income | | |
| | Adjusted gross income for 2013 as reported on individual income tax return, IRS Form 1040 | $150,000**** |
| 808229 | *FMV determined as of August 31, 2015<br>**Wife currently owns only term insurance<br>***Wife's 50% liability, however, Wife is guarantor on an additional $475,000<br>****At the time of Agreement, Wife's 2014 Form 1041 had not yet been filed, however, Wife anticipates that her AGI will be similar to that of 2013. | |

B-2

Butler-Carl_King_00034

Butler-Carl King 00034