UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Civil Action No. 2:18-cv-02522-RMG

| | |
|---|---|
| Susan A. Butler,<br><br>                              Plaintiff,<br><br>vs.<br><br>Carl L. King, Esq.; Megan W. Dunham, Esq.; and CULP ELLIOTT & CARPENTER, PLLC,<br><br>                            Defendants. | **PLAINTIFF'S MOTION AND SUPPORTING MEMORANDUM FOR A PROTECTIVE ORDER TO LIMIT THE DEPOSITION OF SUSAN A. BUTLER, MOTION IN LIMINIE, OR ALTERNATIVELY, FOR A STAY** |

TO:     WARREN C. POWELL, JR., ESQ. AND CHELSEA J. CLARK, ESQ., COUNSEL FOR DEFENDANTS:

**<u>NOTICE</u>**

YOU WILL PLEASE TAKE NOTICE THAT for good cause shown and pursuant to FED. R. CIV. P. 26(c)(1)(A); FED. R. CIV. P. 26(c)(1)(D); FED. R. CIV. P. 30(d)(3); Local Rule 30.04 (D.S.C.); and FED .R. EVID. 403, Plaintiff hereby moves for a Protective Order to limit Defendants' efforts to obtain evidence and testimony on matters: 1) concerning a wholly unrelated criminal Indictment (3:19-cr-00088-JFA) issued against Ms. Butler on January 15, 2019, long after the underlying divorce at issue in this lawsuit was over; and 2) matters related to Ms. Butler's involvement with a business she owned, South Carolina Early Autism Project (SCEAP) (collectively and generally referred to as "the Indictment").[1]  This motion also seeks to preclude

---

[1] Plaintiff incorporates herein by reference Plaintiff's Memorandum in Opposition to Defendants' Motion For Leave To Depose Incarcerated Persons And For An Extension of Time to Complete Discovery (ECF No. 28), which addresses related and parallel matters concerning the Indictment.

Defendants from resuming the deposition of Plaintiff, Susan A. Butler to inquire about matters related to the Indictment; to affirm the objections and instructions not to answer questions about the Indictment made during the deposition of Ms. Butler on August 20, 2019; and to preclude Defendants from conducting additional discovery about the Indictment; asking questions during the deposition of any other witnesses about the Indictment; and offering evidence or testimony at trial about the Indictment, as these matters are not relevant to the claims and defenses in this case and the probative value of such evidence or testimony is substantially outweighed by a danger of causing unfair prejudice, confusing the issues, and misleading the jury.

## **MOTION**

Pursuant to FED. R. CIV. P. 26(c)(1)(A); FED. R. CIV. P. 26(c)(1)(D); FED. R. CIV. P. 30(d)(3); Local Rule 30.04 (D.S.C.); and FED .R. EVID. 403, Plaintiff moves for a Protective Order to affirm the objections and instructions to Ms. Butler not to respond to questions about the Indictment asked during her deposition and to preclude Defendants from (1) resuming the deposition of Plaintiff, Susan A. Butler to inquire about matters related to the Indictment; (2) conducting additional discovery about the Indictment; (3) asking questions about the Indictment during the deposition of any other witnesses; and (4) offering evidence or testimony at trial about the Indictment, as matters concerning the Indictment are not relevant to the claims and defenses in this case and the probative value of such evidence or testimony is substantially outweighed by a danger of causing unfair prejudice, confusing the issues, [and] misleading the jury.  In the alternative, if this Court is not inclined to grant this motion, Plaintiff moves the Court to issue an Order staying this case until the Indictment proceedings have been resolved.

The grounds for this Motion—in conjunction with Plaintiff's Memorandum in Opposition to Defendants' Motion For Leave To Depose Incarcerated Persons And For An Extension of Time to Complete Discovery (ECF No. 28)—are as follows:

1. Matters involving the subject Indictment are outside the scope of permitted discovery and are not relevant to any party's claim or defense in this case.

2. The litigation resources that would be expended if Defendants are allowed to pursue discovery of information and testimony related to the Indictment far outweigh the probative value of such information and testimony, especially in light of the patent inadmissibility of this evidence and testimony.

3. Questions posed to Ms. Butler in her deposition about the Indictment sought to unreasonably annoy, embarrass, and/or oppress Ms. Butler.

4. Questions posed to Ms. Butler in her deposition about the Indictment, if she were directed by this Court to answer, would likely be responded to by an answer invoking her Fifth Amendment privilege against self-incrimination.

5. Alternatively, in the event the Court is not inclined to issue a Protective Order precluding inquiry into matters related to the Indictment and precluding introduction of any evidence or testimony at trial related to the Indictment, Plaintiff respectfully requests the Court issue an Order staying this civil lawsuit until the criminal Indictment is resolved or completed.

## Summary of the Arguments

**1. Testimony related to the Indictment is not relevant to the claims or defenses in this case.**

**2. The potential for unfair prejudice and jury confusion harm that could arise from the introduction at trial of information concerning the Indictment—including the possible implications it could have on the pending Indictment—far outweighs any interest Defendants**

**may have in using this evidence or testimony to impeach Ms. Butler's credibility on matters wholly unrelated to the claims or defenses in this legal malpractice case.**

## Background

1.     The claims and defenses in this lawsuit relate to whether in August-September 2015, Defendants breached the standard of care in preparing and advising Ms. Butler to execute the "Premarital Agreement" they prepared for Ms. Butler; and if so, the amount of Ms. Butler's financial losses resulting from the alleged defective agreement that were incurred in Ms. Butler's divorce that became final on May 11, 2018, when the Final Order Approving Final Agreement and Decree of Divorce was entered.

2.     The subject Indictment, a copy of which was included with a motion filed by Defendants on August 21, 2019, and recorded as ECF No. 25-1, was issued against Ms. Butler on January 15, 2019, <u>more than eight months *after* the divorce and more than three years after the Premarital Agreement at issue in this lawsuit</u>.  The Indictment relates to the South Carolina Early Autism Project (SCEAP), SCEAP's alleged billing practices, and Ms. Butler's alleged involvement in those billing practices.

3.     Because the Indictment was issued more than eight months <u>after</u> the subject divorce was final and more than three years <u>after</u> the Premarital Agreement, it and any activity by Ms. Butler involving SCEAP was not at issue during her underlying divorce, nor during the representation giving rise to the Premarital Agreement.  In January 2013, Ms. Butler conveyed her interests in SCEAP, which was more than 2 ½ years <u>before</u> she first contacted Defendants about a prenuptial agreement.

4.     On July 29, 2019, during the deposition of Alexander B. Cash, Esq., taken by counsel for the Defendants, questions were asked about Mr. Cash's knowledge of a criminal investigation of

SCEAP and whether that was an issue in the divorce. Mr. Cash's testimony was generally that he was aware of the investigation and that it had no bearing on the settlement agreement that was incorporated into the divorce decree. See (Deposition of Cash, dated July 29, 2019, 14:1-17:18, Exhibit 27-1).

6.     On August 20, 2019, Defendants took the deposition of Plaintiff, Susan A. Butler, and the transcript from the deposition has not been generated. During the deposition questions were posed concerning matters related to the Indictment and Ms. Butler was instructed not to respond to the questions on the ground stated in this motion. This motion was timely filed pursuant to Local Rule 30.04 (D.S.C.).

7.     On August 21, 2019, Defendants filed a Motion and Memorandum of Law For Leave to Depose Incarcerated Persons and for an Extension of Time to Complete Discovery (ECF No. 25) seeking leave to take the depositions of two incarcerated individuals on matters related to the Indictment. Defendants' claim that "the issue of [Ms.] Butler's credibility" did not "become essential to the defense" in this case until obtaining Ms. Butler's "sworn position" in her deposition on August 20, 2019, as to whether Defendants provided "sufficient warnings . . . that [Ms.] Butler should not enter into the parties premarital agreement which, at least on its face, guaranteed Kelly $250,000 in the event the parties marriage lasted less than two years." (Defendants' motion, ECF No. 25 at *3).

8.     On August 22, 2019, Defendants served Supplemental Answers to 26 (a)(1) Initial Disclosures, identifying for the first time eight new witnesses, including the two incarcerated persons, Ms. Keith and Ms. Eldridge. For each of the witnesses, Defendants described the subject matter of their testimony as, "On information and belief [Ms.] Butler's management of the business

owned by Eldridge and Butler, which led to systematic Medicaid fraud and guilty pleas of Ann Eldridge and Angela Keith as well as Plaintiff's federal indictment."

## Arguments

I. **Questions posed to Ms. Butler and further discovery on matters related to the Indictment are outside of the discovery permitted by F. R. Civ. P. 26(b)(1) because how Ms. Butler "tends to conduct her business" and her "role in the federal government's Medicaid fraud investigation" are not "relevant to any party's claim or defense" in this legal malpractice case and litigation resources required to obtain such testimony are not in "proportion to the needs of the case."**

Defendants' goal for obtaining information about the Indictment, as stated in their motion (ECF No. 25) to take the depositions of Ms. Keith and Ms. Eldridge, is to obtain "testimony on the manner in which [Ms.] Butler tends to conduct her business and her role in the federal government's Medicaid fraud investigation" as part of their challenge to Ms. Butler's credibility. (Defendants' motion, ECF No. 25 at *3). In other words, information about the Indictment would be used to impeach Ms. Butler's credibility in general, and not with regard to any statements or claims Ms. Butler made related in any fashion to Defendants' representation of her. Especially because Ms. Butler has not been tried or convicted of the charges in the Indictment, any information obtained about the Indictment is not "relevant to any party's claim or defense" and relates only to Ms. Butler's character in general or specifically, Ms. Butler's character related to her work at SCEAP. Such information is not and could not be probative of specific discussions or lack thereof on the part of Defendants concerning the representation that gave rise to the claims in this lawsuit. Information about the Indictment is so remote to the claims or defenses in this case that the litigation resources necessary to obtain this information, including further deposing Ms. Butler and also participating in the depositions of Ms. Keith and Ms. Eldridge, who are incarcerated in West Virginia, clearly outweigh the value of such testimony, especially given that

is not likely to be admissible at trial of this case, as argued later in this motion and supporting memorandum.

The Fourth Circuit recently addressed the scope of discovery available under F. R. Civ. P. 26(b)(1) as follows:

> All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is not, on its own, a high bar. There may be a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative. Rule 26 therefore imposes another requirement: discovery must also be "proportional to the needs of the case." Id. Proportionality requires courts to consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. This relieves parties from the burden of taking unreasonable steps to ferret out every relevant document.

Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 188-89 (4th Cir. 2019).

In Jordan, the Fourth Circuit also recognized further restrictions on the "proportionality" prong of Rule 26 finding that

> courts should consider not just the relevance of information sought, but the requesting party's need for it. *The information sought must likely (not just theoretically) have marginal benefit in litigating important issues*. (We mean "marginal" in the economic sense that the information must offer some value over and above what the requesting party already has, not in the sense that a mere de minimis benefit will suffice.)

921 F.3d at 189 (internal citations omitted) (emphasis added).

A district court has broad discretion in deciding relevancy matters involving F. R. Civ. P. 26. Watson v. Lowcountry Red Cross, 974 F.2d 482, 489 (4th Cir. 1992); see Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming that ... information is relevant ..., the simple fact that requested information is discoverable under Rule 26(a) does not

mean that discovery must be had."). However, "discovery is not limitless," Mach. Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 526 (D.S.C. 2018), and a court "must limit the frequency or extent of discovery" if, as is the case here, "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." See FED. R. CIV. P. 26(b)(2)(C).

Rule 26 does not permit the discovery sought by Defendants, including allowing Defendants to further depose Ms. Butler or take the depositions of the two individuals incarcerated in West Virginia, because how Ms. Butler "tends to conduct her business" and her "role in the federal government's Medicaid fraud investigation" simply are 1) not "relevant to any party's claim or defense" in this legal malpractice case and 2) the litigation resources required to obtain such testimony are not in "proportion to the needs of the case." Plaintiff's motion should be granted.

**II.     The testimony sought by Defendants should not be admissible at trial of this case on multiple evidentiary grounds.**

Defendants should be precluded from undertaking any additional discovery on the Indictment issue because, even if Defendants are permitted to resume taking the deposition of Ms. Butler to inquire about the Indictment and/or take the depositions of Ms. Keith and Ms. Eldridge, at trial Defendants should be precluded from offering any evidence or testimony referencing the Indictment or how Ms. Butler does business in general. This is because testimony related to the Indictment or Ms. Butler's involvement with SCEAP (1) is not probative for any facts at issue in this case, and so they are not relevant under FED. R. EVID. 401; (2) is not admissible under Rule 404(b)(1), (2), which prohibits the introduction of evidence of a crime, wrong, or other act to show action in conformity therewith; (3) even if testimony related to the Indictment or Ms. Butler's involvement with SCEAP is deemed to be relevant, their probative value is substantially

outweighed by the likelihood of unfair prejudice and is therefore inadmissible under FED. R. EVID. 403; and (4) because it does not satisfy the weighing analysis under FED. R. EVID. 403, such testimony is not admissible to impeach her credibility pursuant to FED. R. EVID. 608(b) if or when Ms. Butler testifies.  Defendants also claim that information regarding Indictment or Ms. Butler's involvement with SCEAP should be admissible as character evidence to prove Ms. Butler's credibility, or lack thereof. (ECF No. 25 at *3).

> **A.     The testimony sought by Defendants should not be admissible at trial of this case because it is not relevant.**

Reference to other cases, specifically the Indictment or Ms. Butler's involvement with SCEAP, is inadmissible because it is not relevant to this case.  Under Rule 402, only relevant evidence is admissible.  FED. R. EVID. 402.  Rule 401 defines relevant evidence as evidence that "has any tendency to make a fact more or less probable." FED. R. EVID. 401(a).  The Indictment or Ms. Butler's involvement with SCEAP are matters wholly unrelated to the instant legal malpractice claims, and maybe even more importantly, the government's case against Ms. Butler has not gone to trial and there have been absolutely no judicial findings.  Defendants have not demonstrated that the facts and circumstances of Indictment or Ms. Butler's involvement with SCEAP make any material fact in the present case more or less likely. This is especially emphasized by the opinions of Plaintiff's expert, Mr. McDougall, as expressed in his affidavit (ECF No. 7-4) and Supplemental Rule 26(a)(2)(B) report (ECF No. 24) where deficiencies in the "Premarital Agreement" are noted that are unrelated to any communications Defendants may have had with Ms. Butler.  Therefore, the facts and circumstances of Indictment or Ms. Butler's involvement with SCEAP are irrelevant and inadmissible.

> **B.      The testimony sought by Defendants should not be admissible at trial of this case because specific instances of conduct are not admissible when a person's character is not an essential element of any claim or defense.**

References to the Indictment or Ms. Butler's involvement with SCEAP should not be admitted as character evidence. Specific instances of conduct are admissible as character evidence only when "a person's character ... is an essential element of a charge, claim, or defense," FED. R. EVID. 405(b), or on cross examination if they are "probative of the character for truthfulness or untruthfulness of: (1) the witness." FED. R. EVID. 608(b). Ms. Butler's character is not an essential element of any of the claims or defenses in this case. See (Complaint, ECF No. 1; Amended Complaint, ECF No. 7; and Defendants' Answer to Amended Complaint, ECF No. 14). As a result, the testimony sought will not admissible under FED. R. EVID. 405(b). In addition, Defendants have not alleged any connection between this legal malpractice case and the Indictment or Ms. Butler's involvement with SCEAP. See (Defendants' Answer to Amended Complaint, ECF No. 14). Defendants are likely to assert in response to this motion (as they have asserted in ECF No. 25) that they seek information not specific to Plaintiff's character for veracity, but instead as to her character generally on the manner in which [Ms.] Butler tends to conduct her business; and again not her character for veracity but instead her role in the federal government's Medicaid fraud investigation. As a result, neither testimony about the Indictment nor Ms. Butler's involvement with SCEAP are probative of her character for truthfulness, but instead only concern (generally) the manner in which she conducts her business or (specifically) her role in an investigation. As such, the testimony from Ms. Keith or Ms. Eldridge is not admissible under FED. R. EVID. 608(b).

The circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion and delay. See Michelson v. United States, 335 U.S. 469, 476 (1948) ("The overriding policy of excluding such evidence, despite its admitted probative value,

is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.").

      Rule 404. <u>Character Evidence; Crimes or Other Acts</u>, provides as follows:

(a)     <u>Character evidence</u>.

    (1)     <u>Prohibited Uses</u>. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

          - - -

    (3)     <u>Exceptions for a Witness</u>. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b)     <u>Crimes, Wrongs, or Other Acts</u>.

    (1)     <u>Prohibited Uses</u>. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

    (2)     <u>Permitted Uses; Notice in a Criminal Case</u>. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. ….

FED. R. EVID. 404.

      Defendants' true intent behind their desire to offer testimony related to the Indictment or Ms. Butler's involvement with SCEAP as evidence to prove Ms. Butler's character as fraudster and generally deceitful and to prove that she acted in accordance with that character in her role as the client in the attorney-client relationship with the Defendants, as well as in her subsequent divorce from Mr. Kelly. That is prohibited by FED. R. EVID. 404(b)(1). See <u>Fulton v. Nisbet</u>, No. CV 2:15-4355-RMG, 2018 WL 565265, at *2 (D.S.C. Jan. 25, 2018); <u>United States v. Queen</u>, 132 F.3d 991, 997 (4th Cir. 1997) (elements for admission of prior-bad-acts evidence under Rule

404(b): "(1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. (4) The evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.).

In addition, Rule 608. <u>A Witness's Character for Truthfulness or Untruthfulness</u>, provides as follows:

> (a) <u>Reputation or Opinion Evidence</u>. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.
>
> (b) <u>Specific Instances of Conduct</u>. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
>   (1) the witness; or
>
>   (2) another witness whose character the witness being cross-examined has testified about.

FED. R. EVID. 608.

> Rule 608 authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement. However, because '[a] witness' credibility may not be impeached by extrinsic evidence of specific instances of conduct[,] ... [a] cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness' denials.' The purpose of Rule 608(b)

'is to prohibit things from getting too far afield—to prevent the proverbial trial within a trial.'

Norton v. Rosier, No. 7:14-CV-00260-FL, 2019 WL 346709, at *2 (E.D.N.C. Jan. 28, 2019), as amended (Mar. 1, 2019) (quoting United States v. Bynum, 3 F.3d 769, 772 (4th Cir. 1993)). The South Carolina state courts have previously held that "witnesses generally are 'not allowed to testify whether another witness is telling the truth.'" State v. Daise, 807 S.E.2d 710, 718 (S.C. App. 2017), reh'g denied (Dec. 14, 2017). Ms. Butler's general reputation does not reveal any fact "of consequence in determining the action" because it bears no connection to issues of fact was to whether Defendant lawyers met the standard of care in preparing the prenuptial agreement, and if not, whether Ms. Butler incurred financial losses as a proximate result. Therefore, evidence related to the subject matter of the Indictment issued long after Ms. Butler's divorce was final is irrelevant.

Unsubstantiated complaints of prior conduct directed against a witness by third parties (including the government), are not admissible under FED. R. EVID. 608(b). See United States v. Harris, 551 Fed. Appx. 699, 706 (4th Cir. (2014) (affirming the district court's exclusion of "brutality" and "excessive force" allegations in an officer's disciplinary records under Rule 608(b)); State v. Jarrell, 564 S.E.2d 362, 372 (S.C. Ct. App. 2002) (witness cannot be impeached under Rule 609, SCRE since uncharged offense or pending investigation is not probative of truthfulness); State v. Kelsey, 502 S.E.2d 63, 75 (S.C. 1998) (court's inquiry under Rule 608(b) is limited to those specific instances of misconduct which are clearly probative of truthfulness or untruthfulness); State v. Joseph, 491 S.E.2d 275, 278 (S.C. Ct. App. 1997) (witness may not be impeached with offense referred to pretrial intervention under Rule 609 since it is not a conviction).

Evidence of an investigation that concluded with a judicial finding of untruthfulness could—*if it existed*—be admissible as relevant and material under FED. R. EVID. 608(b), to

impeach Ms. Butler's character for truthfulness on cross-examination. See, e.g., United States v. Parker, 790 F.3d 550, 559-62 (4th Cir. 2015).  But there has been no such judicial finding.  As such, this is nothing more than Defendants' fishing expedition hoping to find information to smear Ms. Butler's character.  Misconduct that is probative of truthfulness includes situations where there has been a judicial finding of "perjury, fraud, swindling, forgery, bribery, and embezzlement." See United States v. Leake, 642 F.2d 715, 718 (4th Cir.1981).  However, "[m]ere accusations of prior misconduct inherently have little probative value. They are, after all, 'both unproven and unconnected to th[e] [instant] case.'" United States v. Harris, 551 Fed. App'x 699, 706 (4th Cir. 2014) (quoting United States v. Custis, 988 F.2d 1355, 1359 (4th Cir.1993)); see Custis, 988 F.2d at 1359 fn. 1 ("Admissibility under Rule 608(b) is subject to the balancing test of Rule 403.") ("unproven" allegations of perjury in an unrelated case are insufficient "newly discovered evidence" to set aside a jury's verdict); Holt v. Stirling, No. CV 6:15-4865-TMC-KFM, 2016 WL 8606495, at *8 (D.S.C. Sept. 28, 2016), report and recommendation adopted, No. CV 6:15-4865-TMC, 2017 WL 1105064 (D.S.C. Mar. 24, 2017), dismissed, 692 F. App'x 145 (4th Cir. 2017). Inadmissible unsubstantiated complaints include "mere accusations, rather than findings, of misconduct based on untruthfulness." Accordingly, Defendants should not be allowed to inquire about the unsubstantiated events alleged in the Indictment or about Ms. Butler's involvement with SCEAP.

    **C.**    **The testimony sought by Defendants should not be admissible at trial of this case because the probative value of the testimony is greatly outweighed by the danger of unfair prejudice and jury confusion.**

The facts of any other case involving Ms. Butler are not admissible because the probative value of the information is "substantially outweighed by a danger of ... unfair prejudice [and] confusing the jury." FED. R. EVID. 403.  "Evidence of other lawsuits ... is inadmissible under Rule

403.... Evidence of other lawsuits is likely to confuse and mislead the jury ... and it is highly prejudicial" to defendants.  Davenport v. Goodyear Dunlop Tires N. Am., Ltd., No. 1:15-CV-03751-JMC, 2018 WL 833605, at *3 (D.S.C. Feb. 13, 2018) (citing In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig., No. 2:12-MD-02327, 2014 WL 505234, at *6 (S.D.W. Va. Feb. 5, 2014); Huskey v. Ethicon, Inc., 848 F3d 151, 160-161 (4th Cir. 2017) (in products liability action against manufacturer of a transvaginal surgical mesh device, court properly excluded evidence of device's compliance with FDA approval process that only tangentially examines safety of device if it is "'substantially equivalent'" to an existing approved device, finding evidence was marginally relevant and outweighed by risk of confusion and wasted time that would follow with possible battle of experts over FDA process and its safety considerations).  See also, United States v. Lewis, 780 F.2d 1140, 1142 (4th Cir.1986) (determinative threshold requirements for admitting evidence under Rule 404(b) are: (a) whether the proffered evidence is relevant to an issue other than the defendant's character, and (b) whether the probative value is substantially outweighed by its prejudicial effect); Bennett v. R & L Carriers Shared Services, LLC, F. Supp.2d 494 (E.D. Va. 2010) (In a civil malicious prosecution action, probative value of testimony of state's assistant attorney about basis for prosecuting terminated employee, and her future intention to prosecute employee, for purported embezzlement from employer was outweighed by its prejudicial effect).

      Therefore, because the testimony from Ms. Butler and the testimony sought in Defendants' motion (ECF No. 25) should not be allowed to be admitted at trial, the proportionality of the litigation resources necessary to obtain this testimony, on the one hand, far outweighs the value this testimony might add to the Defendants' ability to impeach the credibility of Ms. Butler.  In other words, because evidence related to the Indictment or Ms. Butler's involvement with SCEAP is not admissible under FED. R. EVID. 608(b), obtaining such evidence is not a proper subject to

discovery and should be precluded in this case.

## II. "Good cause" exists to issue a Protective Order and to grant Plaintiff's motion in liminie precluding the introduction of evidence related to the Indictment.

Plaintiff requests the Court issue a Protective Order precluding Defendants from (1) resuming the deposition of Ms. Butler to inquire about matters related to the Indictment; (2) conducting additional discovery about the Indictment; (3) asking questions about the Indictment during the deposition of any other witnesses; and (4) offering any evidence or testimony at trial about the Indictment, as matters concerning the Indictment are not relevant to the claims and defenses in this case and the probative value of such evidence or testimony is substantially outweighed by a danger of causing unfair prejudice, confusing the issues, and misleading the jury.

Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. See FED. R. CIV. P. 26(c)(1). "The party moving for a protective order bears the burden of establishing good cause." Slager v. S. States Police Benevolent Ass'n, Inc., No. 2:15-CV-04536-DCN, 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016) (issuing order granting motion for protective order precluding defense from inquiring into privileged matters implicating Fifth Amendment privilege against self-incrimination). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." Id. "The district court, however, is afforded broad discretion 'to decide when a protective order is appropriate and what degree of protection is required.'" Id. (citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)). "Under Rules 26(b)(2)(C) and 26(c), the court has broad authority to limit discovery and prescribe alternative discovery mechanisms; in other words, to determine when a protective order

is appropriate and what degree of protection is required. In re C. R. Bard, Inc. Pelvic Repair Systems Product Liability Litigation, 2014 WL 12703776, *2 (S.D.W. Va. June 6, 2014) (internal quotes and citations omitted).

While Ms. Butler acknowledges that a protective order is not necessarily required for her to assert her Fifth Amendment privilege against self-incrimination, she respectfully requests this Court issue a Protective Order precluding Defendants from further inquiry into matters related to the Indictment as this information is wholly irrelevant to the claims or defenses in this legal malpractice case and coupled with the potential harm further inquiry into this matter may have only pending criminal Indictment clearly constitutes "good cause" for the issuance of a Protective Order in this matter. In addition, Ms. Butler and record from her deposition may be seriously impaired if she refuses to testify in this lawsuit while the unrelated criminal Indictment is pending. Ms. Butler would subject herself to serious harm, in that she risks waiver of the Fifth Amendment privilege if she answers questions that relate in any way to the subject Indictment. It would be different if the claims or defenses in this legal malpractice lawsuit were even remotely relevant to the matters involved in the criminal Indictment; but they are not. In addition, Ms. Butler is not seeking to have her entire deposition quashed. She responded to all other questions posed during her deposition that were unrelated to the Indictment.

"The Supreme Court has cautioned that the Constitution limits the imposition of any sanction which makes assertion of the Fifth Amendment privilege costly." SEC v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir.1994). "Given this consideration – and because all parties should have a reasonable opportunity to litigate a civil case fully – courts should seek out ways to permit as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege." Davis-Lynch, Inc. v. Moreno, 667 F.3d 539, 547 (5th Cir. 2012) (footnote and

internal quotation marks omitted).  When there are competing interests posed by an invocation of the Fifth Amendment, a court should measure the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible." Id.  But, "while a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him ... his refusal to testify may be used against him in a civil proceeding." Hinojosa v. Butler, 547 F.3d 285, 291 (5th Cir. 2008) (internal quotation marks omitted). "Thus, although a jury in a criminal case is not permitted to draw adverse inferences based on a defendant's invocation of his Fifth Amendment rights, it is well-settled that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Id. (internal quotation marks omitted).

And therein lies the problem: if discovery concerning the Indictment is permitted in this legal malpractice case while the Indictment is pending and in the likely event that Ms. Butler invokes her Fifth Amendment privilege against self-incrimination then Defendants will be asking for the Court to instruct the jury that they are permitted to draw adverse inferences against Ms. Butler on matters that are wholly unrelated to—and not probative of—the claims in the legal malpractice case.  This should not be permitted.  This motion for Protective Order and for an Order in liminie should be granted precluding Defendants from further pursuing discovery on the Indictment or offering evidence at trial related to the indictment.

**III.     In the event the motion for protective order and motion in liminie are denied, this lawsuit should be stayed until the Indictment has been resolved.**

The motion for protective order and motion in liminie should be granted as stated above. In the alternative, this Court should issue an order staying these proceedings until the Indictment has been fully litigated and resolved.  Allowing this legal malpractice case to proceed with

Defendants having the ability to pursue discovery concerning the Indictment would jeopardize Ms. Butler's defense in the Indictment as well as her Fifth Amendment privilege against self-incrimination.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Stone v. Trump, 356 F. Supp. 3d 505, 517 (D. Md. 2018) (citing Donnelly v. Branch Banking & Trust Co., 971 F. Supp.2d 495, 501 (D. Md. 2013) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ).  The district court considers the following factors when determining whether to grant a stay:

1. the length of the requested stay,
2. the hardship that the movant would face if the motion were denied,
3. the burden a stay would impose on the nonmovant, and
4. whether the stay would promote judicial economy by avoiding duplicative litigation.

Id. at 517.

All four factors militate in favor of staying this case. The Indictment will likely go to trial sometime in 2020, and depending on the date of the criminal trial, this legal malpractice case could be restored and back on track sometime by the end of 2020. In other words, the length of the requested stay is minimal. As stated throughout this Motion, the hardship Ms. Butler would face would be significant as the record in this legal malpractice case will be littered with information about the Indictment, which is wholly unrelated to the claims or defenses in this case. The burden a stay would impose on Defendants in this lawsuit is virtually nonexistent. At worst, for the Defendants would be a delay in the jury rendering a verdict in this case. Finally, a stay would promote judicial economy as each of these two separate cases that is, the legal malpractice case

and the Indictment, would be able to proceed independent of one another. In addition, the concerns about Fifth Amendment self-incrimination would be removed from the legal malpractice case.

## CONCLUSION

WHEREFORE, Plaintiff request this Honorable Court grant Plaintiff's Motion for Protective Order to limit Defendants' efforts to obtain evidence and testimony matters concerning a wholly unrelated Indictment, precluding Defendants from resuming the deposition of Ms. Butler to inquire about matters related to the Indictment; affirming the objections and instructions not to answer questions about the Indictment made during her deposition; precluding Defendants from conducting additional discovery about the Indictment; asking questions during the deposition of any other witnesses about the Indictment; and offering evidence or testimony at trial about the Indictment. Matters related to the Indictment are not relevant to the claims and defenses in this case and the probative value of such evidence or testimony is substantially outweighed by a danger of causing unfair prejudice, confusing the issues, and misleading the jury.

Respectfully submitted,

PENDARVIS LAW OFFICES, P.C.

s/ Thomas A. Pendarvis
Thomas A. Pendarvis (Fed. Id. 5785)
Christopher W. Lempesis, Jr. (Fed. Id. 11462)
710 Boundary Street, Suite 1-A
Beaufort, SC 29902
843.524.9500
Thomas@PendarvisLaw.com
Chris@PendarvisLaw.com

Counsel for Plaintiff, Susan A. Butler

Beaufort, South Carolina

August 27, 2019