IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Susan A. Butler, | ) | Civil Action No. 2:18-2522-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Carl L. King, J.D.; Megan W. Dunham, | ) | |
| J.D.; and Culp Elliott & Carpenter, PLLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendants' motion for leave to depose Angela Keith and Ann Eldridge. (Dkt. No. 25.) For the reasons set forth below, the motion is denied.

I. **Background**

In September 2018, Plaintiff Susan Butler initiated this professional malpractice and breach of contract action. She alleges that in September 2015, Defendants—a North Carolina law firm and its two attorneys—negligently counseled her and drafted the premarital agreement that resulted in Butler's now former husband obtaining a substantial amount of financial benefit from their divorce. (Dkt. No. 1.)

In January 2019, Butler was indicted by a federal grand jury on one count of conspiracy to commit healthcare fraud and one count of healthcare fraud, allegedly arising out of Medicaid billing by her company, the South Carolina Early Autism Project ("SCEAP"). (3:19-cr-0088-JFA.) Discovery in the prosecution is ongoing. (*Id.* at Dkt. No. 29.) The U.S. Attorney's Office also prosecuted Angela Keith, Butler's colleague at SCEAP, and Ann Eldridge, Butler's co-owner of SCEAP. (3:19-cr-0091-PJG.) Keith and Eldridge each pleaded guilty to making false statements in relation to Medicaid benefits (*id.* at Dkt. Nos. 17, 18), were sentenced to terms of imprisonment and

1

are currently incarcerated at Federal Prison Camp Alderson in West Virginia.[1] Defendants now seek leave to depose Keith and Eldridge, which Butler opposes.

## II. Legal Standard

Rule 30 of the Federal Rules of Civil Procedure provides that a party "must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) if the deponent is confined in prison." Fed. R. Civ. P. 30(a)(2)(B). Rule 26(b)(1) provides that "parties may obtain discovery regarding any nonpriviledged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). For this, the court considers "the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Rule 26(b)(2) then limits this broad scope of discovery, providing that "the court must limit the frequency or extent of discovery [ ] if it determines that: the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "Courts have broad discretion in [their] resolution of discovery problems arising in cases before" them. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003).

## III. Discussion

Defendants state that at Butler's August 20, 2019 deposition, it "became apparent" that she alleges Defendant Megan Dunham did not warn her against an alimony provision that entitled

---

[1] *See* FED. BUREAU OF PRISONS, Inmate Locator (search by last name) (last visited Sept. 12, 2019), https://www.bop.gov/inmateloc/.

2

Butler's then-husband to $250,000 if they divorced within two years. (Dkt. No. 25 at 3.) Rather, as Defendants contend, Dunham "strongly discouraged" Butler from agreeing to the provision. (*Id.* at 3.) A review of Butler's actual testimony is required to determine if it revealed new information that may require additional discovery. Butler testified on defense counsel's questioning:

> Q. [I]f Megan had done those things and said – said to you, you need to – you need to think this over, I suggest there are bad things that can happen and gave you advice and certain warnings in that regard, would you have listened to her?
>
> A. If Megan had told me you owe him nothing, you should not give him anything, there is no opportunity cost, no.
>
> Q. You would not have listened to her?
>
> A. I would have listened to her. I wouldn't have – I wouldn't – I wouldn't have suggested that payment. She told me just the opposite. He's entitled to X, a large portion of your 401K. He's entitled to X amount of you – your financial wealth.
>
> Q. Okay. So your testimony about this subject about the agreement and the payment is that Megan Dunham gave you no warnings at all?
>
> A. The only thing she said when I suggested the – the payment – first of all, we talked about it, so it wasn't – it was something that I was given advice that I did owe him opportunity cost. I did owe him opportunity cost because I was making him put his career on hold, so – so I owed him, and so –
>
> Q. That's what Megan told you?
>
> A. She gave the scenario when the moneyed spouse is married and the other spouse puts their career on hold, there is an opportunity cost [. . .] for that.
>
> [. . .]
>
> A. That is what she said.

(Dkt. No. 32-1 at 122-23.)

Defendants urge that Butler's August 2019 deposition testimony brought her allegation of Dunham's malpractice in the 2015 conversation, and therefore the need for discovery related to the arising credibility issue, to their attention for the first time. But Butler pleaded this allegation in her

3

October 2018 amended complaint and Defendants denied it in their December 2018 answer.[2] *See, e.g., LeBlanc v. Coastal Mech. Servs., LLC*, No. 04-80611-CIV-RYSKAMP, 2005 WL 8156045, at *4 (S.D. Fla. Mar. 22, 2005) (considering whether deposition "testimony brought new information to light" or if "this accusation has been known" before then inquiring into relevance of discovery sought on a Rule 30(a)(2) motion). Relatedly, as Butler correctly raises in opposition, Defendants make no showing of the good cause required by Rule 16 to obtain the requested twenty-day extension of the current September 17, 2019 discovery deadline.[3] *See Cook v. Howard*, 484 Fed. Appx. 805, 815 (4th Cir. 2012) (affirming denial of motion to amend where movant "had not been diligent in pursuing" discovery, because "[g]ood cause requires the party seeking relief to show that the deadlines cannot reasonably be met despite the party's diligence").

Regardless of the impetus of Defendants' instant request, it is unclear that the information sought is within the scope of Rule 26. Defendants argue that Butler's deposition testimony created a dispute of fact now necessitating discovery into Butler's "credibility," which may be discoverable from her former colleagues and alleged criminal cohorts, Keith and Eldridge. More specifically,

---

[2] The amended complaint alleges that during a September 8, 2015 phone conversation, Defendant Dunham "raised and discussed the fact that it is common in marital agreements for one spouse to receive alimony payments where that spouse had to forego their own earning opportunities. This discussion, which Ms. Dunham held with both Ms. Butler as the client and Mr. Kelly as the opposing party, touched off a series of discussions that would lead to an alimony clause, referenced below, which was severely detrimental to Ms. Butler's interests, and which was inserted because Ms. Dunham introduced this point in discussions with Ms. Butler and Mr. Kelly." (Dkt. No. 7 ¶ 23.)

In their answer to the amended complaint, Defendants admit that this conversation occurred "but vehemently den[y] that this conversation included Mr. Kelly and that if Mr. Kelly was listening to the phone conversation between Ms. Dunham and her client, Ms. Dunham was unaware of this fact. Defendants further admit so much of the allegations as state or imply that Ms. Butler and Ms. Dunham discussed whether the premarital agreement could address postnuptial joint ventures between the couple. The remaining allegations contained in said Paragraph are denied." (Dkt. No. 14 ¶ 23.)

[3] The Court does not find that Butler's August 20, 2019 deposition testimony constitutes good cause to extend the discovery deadline because, again, Defendants were already on notice of this dispute of fact from the pleadings.

4

Defendants seek to depose Keith and Eldridge "on the manner in which Butler tends to conduct her business and her role in the federal government's Medicaid fraud investigation." (Dkt. No. 25 at 3.)

Although Rule 26(b)(1) allows for broad discovery, the information sought must "bear on [or] reasonably could lead to another matter that could bear on, any issue that is in or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Generally, "the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *U.S. v. Abel*, 469 U.S. 45, 52 (1984). At least one district court has relied on this general proposition to allow a Rule 30(a)(2) deposition, but on facts and concerns different from those at bar. For example, in *LeBlanc v. Coastal Mechanical Services, LLC*, a deponent testified that the plaintiff paid-off a third-party deponent for his testimony. Defendants then sought leave to re-depose the third-party deponent to prod if plaintiff indeed paid for his prior testimony. The Court determined that this information sought was squarely relevant to both the plaintiff's and the third-party deponent's credibility and, therefore, within the scope of Rule 26(b). 2005 WL 8156045, at *4. Here, by contrast, Defendants seek available information for the first time relating to Butler's unconvicted fraud to substantiate their contention that she also lied in a deposition in a later and unrelated tort action, in order to dispose of a dispute of fact wherein the parties disagree as to the substance of a conversation. It is unclear how Butler's former colleagues' observations of her business conduct would be relevant to defending against the current malpractice allegation that, in 2015, Dunham misguided Butler from protecting assets during a divorce.[4] "At most, [Keith and Eldridge] could testify as to the truth of the incident

---

[4] Butler raises in opposition that she sold her interest in SCEAP in 2013 and, therefore, that Keith's and Eldridge's testimony regarding her pre-2013 business conduct is irrelevant to her allegation that Dunham later miscounseled her in 2015. (Dkt. No. 28 at 3.) The testimony sough is irrelevant, but not for that reason: Butler and Eldridge remained executives at SCEAP after it became a wholly owned subsidiary of ChanceLight Inc. on January 1, 2013 (Dkt. No. 32-1 at 24; *see also*

between [themselves] and [Butler], which is not at issue in this case." *Lopez v. Williams*, No. 17-882-JGB (SP), 2018 WL 6113086, at *5 (C.D. Ca. June 21, 2018) (denying motion to depose incarcerated third-party regarding being struck by defendant because information would be only minimally relevant to negligent hiring claim); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2018 WL 340640, at *5 (N.D. Ca. Jan. 9, 2018) (granting unopposed motion to depose incarcerated former executives of defendant corporation who were, based on their criminal plea agreements, "likely to have knowledge of facts that are relevant to Plaintiffs' claims" in a securities class action stemming from violations of emissions standards).

Separate from any credibility issue, to the extent Defendants contend Butler misrepresented her financial status to them at the time the premarital agreement was drafted and therefore that they now need discovery into her true finances at the time in order to defend against an allegation that the alimony amount was negligently counseled, such information could be obtained from less burdensome and potentially prejudicial methods than out of the Government's criminal investigation of Butler, the facts of which are still being discovered, including deposing individuals who may have agreed to testify against her. (3:19-cr-0091-PJG, Dkt. Nos. 2, 3.)

The Court finds that the information sought from Keith and Eldridge is not sufficiently relevant to defending against Butler's legal malpractice claim and, therefore, is "outside the scope permitted by 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). As a result, the standard imposed by Rule 30(a) is not satisfied and the motion is denied.

---

CHANCELIGHT INC., Oct. 1, 2013 Press Release, *available at* https://chancelight.com/news/early-autism-project-inc-promotes-co-founders-sumter-s-c/) and Butler's criminal indictment alleges healthcare fraud via SCEAP from about January 2009 through June 2016 (3:19-cr-0088-JFA, Dkt. No. 1 at ¶ 3).

## IV. Conclusion

For the foregoing reasons, Defendants' motion for leave to depose Angela Keith and Ann Eldridge (Dkt. No. 25) is **DENIED**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Judge

September 1⌐, 2019
Charleston, South Carolina

7