IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Susan A. Butler, | ) | Civil Action No. 2:18-2522-RMG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Carl L. King, J.D.; Megan W. Dunham, J.D.; and Culp Elliott & Carpenter, PLLC, | ) | |
| Defendants. | ) | |

Before the Court is Plaintiff's motion for a protective order or, in the alternative, to stay these proceedings. (Dkt. No. 27.) For the reasons set forth below, the motion is granted in part and denied without prejudice in part.

**I.   Background**

In September 2018, Plaintiff Susan Butler initiated this professional malpractice and breach of contract action. She alleges that in September 2015, Defendants—a North Carolina law firm and its two attorneys—negligently counseled her and drafted the premarital agreement that resulted in Butler's now former husband obtaining a substantial amount of financial benefit from their divorce. (Dkt. No. 1.)

In January 2019, Butler was indicted by a federal grand jury on one count of conspiracy to commit healthcare fraud and one count of healthcare fraud, allegedly arising out of Medicaid billing by her company, the South Carolina Early Autism Project ("SCEAP"). (3:19-cr-0088-JFA.) Discovery in the prosecution is ongoing. (*Id.* at Dkt. No. 29.) At her August 20, 2019 deposition, Butler was questioned on facts relating to the criminal investigation and prosecution, which she now moves for a protective order to bar or limit. Defendants oppose the motion for protective order.

(Dkt. No. 32.) Butler alternatively requests to stay this proceeding pending "completion" of her criminal prosecution, which Defendants do not oppose.[1]

## II. Legal Standard

Rule 26(b)(1) provides that "parties may obtain discovery regarding any nonpriviledged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). For this, the court considers "the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Rule 26(b)(2) then limits this broad scope of discovery, providing that "the court must limit the frequency or extent of discovery [ ] if it determines that: the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "Courts have broad discretion in [their] resolution of discovery problems arising in cases before" them. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003).

## III. Discussion

Butler moves for a protective order under Rule 30 and Rule 26 of the Federal Rules of Civil Procedure, seeking to affirm her objections to and instructions that she not respond to questioning

---

[1] Defendants indicate they are "at the pleasure of the Court" regarding a stay, which the Court construes as consent. (Dkt. No. 32 at 18.) Butler's reply brief abandoned her request for a protective order and argued only to stay. (Dkt. No. 33.)

2

about "the Indictment."[2] (Dkt. No. 27 at 2.) The motion is timely under Local Rule D.S.C. 30.04(C). The Court considers the merits of limiting discovery under each Rule, in turn.

First, Rule 30 provides in part, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the grounds that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). At the start of questioning, Butler's counsel noted that he was "going to object to any questions relating to the criminal indictment [ ] we believe this is not relevant any respects to the claims in the case, and also under Rule 403 . . . ." (Dkt. No. 32-1 at 7.) Butler was then questioned on the issue—specifically, when SCEAP began receiving Medicaid funds, when she first learned of the federal investigation, and how the investigation effected recapitalization—to which her counsel objected on relevance grounds and instructed her not to answer. (*Id.* at 22-24, 254-57.) There is no indication from the 314-page transcript that Butler was questioned on this topic in bad faith or in a manner that resulted in unreasonable annoyance, embarrassment or oppression.[3]

---

[2] The Court construes Plaintiff's motion to preclude questioning relating to "the Indictment" as to preclude questioning relating not just to the charging document itself, but rather to the facts underlying her ongoing federal criminal prosecution for healthcare fraud.

Plaintiff also requests a protective order "to preclude Defendants from conducting additional discovery about the Indictment; asking questions during the deposition of any other witnesses about the Indictment; and offering evidence or using testimony at trial about the Indictment." (Dkt. No. 27 at 2.) These issues are not ripe for adjudication here and will be considered when any such motion to quash, to compel, or in limine is made. Defendants have separately moved for discovery of emails produced to Butler by the Government in the prosecution (Dkt. No. 31), which is not yet ripe.

[3] Defense counsel did question Butler repeatedly, for example, on when she "became an alcoholic," notwithstanding her supplying answers to when she became aware that she had a substance problem, when she sought help, when she met and married her husband, when they drank together, and whether she was nonetheless an "nontreated alcoholic" before these time periods that she provided. (Dkt. No. 32-1 at 41-45.) Counsel similarly showed Butler multiple photos taken by someone else of her unawake, asking if she was "passed out on the toilet" or had "urinated on the bed or the sofa." (*Id.* at 217-23.)

3

Second, Rule 26 gives the Court discretion to bar inquiry into certain matters or to limit the scope of questioning, upon a showing of good cause, in order to protect the deponent from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(A), (D). Upon such a showing, the court may "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). To oppose such limitation on discovery, Defendants argue that their questioning relating to the criminal proceeding is relevant to Butler's "credibility as to her testimony about her communications" with Defendants, such as regarding the alimony provision, as well as to "any factor that may have impacted the drafting of the premarital agreement, the circumstances around the wedding, the breakdown of the marriage, or the subsequent domestic litigation leading to divorce" because those factors relate to "negligence, comparative negligence, factual cause, proximate cause, and damages." (Dkt. No. 32 at 5.)

As to the first argument, the Court previously rejected this precept in finding that information from Butler's incarcerated former colleagues and alleged co-conspirators about her business conduct as it relates to her credibility is irrelevant to this professional malpractice suit. Plaintiff pleaded in the second amended complaint and testified in her deposition that Defendant Dunham counseled her one way regarding the alimony provision. Defendants denied this in their answer, saying Dunham never gave such advice. This "she-said-she-said" dispute of fact does not rise to the level of good cause necessary to unleash discovery into all parties' credibility. *See, e.g., Barrington v. Mortgage IT, Inc.*, 2007 WL 4370647, at *5 (S.D. Fla. Dec. 10, 2007) ("Defendant, therefore, argues that Plaintiffs' employment records of former employers are relevant to assess Plaintiffs' credibility 'in reference to their prior litigation.' [ ] Plaintiffs acknowledge that credibility is an issue in every case, but they counter that Defendant should be required to demonstrate a good

4

faith basis for Plaintiffs' lack of credibility before it is permitted to obtain the records, otherwise there would be virtually no limits on discovery once a party invokes the mantra of 'credibility' as the basis for a discovery request. The Court agrees, as have other courts."); *see also Chamberlain v. Farmington Sav. Bank*, 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007) ("The defendant maintains that the records are discoverable in order to determine whether the plaintiff has been truthful . . . . [T]he defendant has not alleged any reason to believe that the plaintiff has misrepresented information during the course of this litigation with regard to his previous employment to substantiate such a broad search[.]"); *Premer v. Corestaff Servs., L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005) ("[E]ven though Defendant argues the records requested may reveal Plaintiff made misrepresentations to it . . . and that such information would shed light on [ ] her credibility, it has not provided any supporting information substantiated such a broad search.").

As to the second argument, regarding the breakdown of the marriage, Butler's former husband has already testified that his marriage broke-down because of "alcohol" and his perception that Butler was a "criminal." (Dkt. No. 32-3 at 4.) In any event, Butler's second amended complaint does not allege that the reason underlying the divorce was a reason for in any monetary loss based on Defendants' drafting of the premarital agreement's terms. Regarding the actual drafting of the premarital contract at issue, Defendants raise that Butler misguided them on her true financial status at the time she sought their counsel relating to asset protection, such as because she was defrauding the Government at that time, and therefore that they require discovery of Butler's alleged fraud in order to defend against the malpractice claim. But Defendants could obtain discovery of Butler's finances through less burdensome means, such as by serving subpoena duces tecum on financial institutions.

As a result, the Court finds that limiting Butler's deposition questioning to exclude matters relating to the criminal proceeding is necessary to protect from the undue burden of irrelevant discovery. The objections lodged by Butler's counsel during her August 20, 2019 deposition are affirmed. Because the Court finds a protective order is warranted under Rule 26, it does not reach the merits of whether staying this matter, which Plaintiff requests in the alternative, is necessary.

**IV.    Conclusion**

For the foregoing reasons, Plaintiff's motion (Dkt. No. 27) is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**. Plaintiff's motion for a protective order limiting her deposition questioning is granted, and her motion in the alternative to stay is denied without prejudice.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

September 16, 2019
Charleston, South Carolina